FLASH, LEWIS & CO., PLAINTIFFS IN ERROR, VS. ADNAH C. CONN, DEFENDANT IN ERROR.

Defendant was a stockholder in a company organized under a general act authorizing the formation of corporations for manufacturing purposes, &c., passed by the Legislature of New York, which provides, section 10, that all the stockholders of every company incorporated under this act shall be severally individually liable to the creditors of the company to an amount equal to the amount of stock held by them respectively upon all debts and contracts of the company until the whole amount of capital stock fixed by the company shall have been paid in and a certificate thereof made and recorded as required in section 11, which provides that the president and a majority of the trustees shall, within thirty days after the payment of the last instalment of the capital stock, make a certificate of the amount of the capital stock fixed and paid in, to be sworn to by such officers and recorded in the county wherein the business of the company is carried on. Section 24 provides that no stockholder shall be personally liable for any debt so contracted which is not to be paid within one year from the time of contracting, nor unless suit is commenced against the company within one year after the debt becomes due, and no suit shall be brought against any stockholder until an execution against the company is returned unsatisfied in whole or in part: *Held*, That the liability of the stockholder grows out of his contract in becoming a stockholder, a liability in the first instance, and is not a penalty or in the nature of a penalty or forfeiture for the non-performance of duties or acts of the officers. The provisions of the statute referred to are mere limitations of liability, and not conditions upon which liability is imposed. The courts of this State may enforce such contracts.

Writ of error to the Circuit Court for Escambia county.

(This case would have been placed among the other *common law* cases decided at this term, but it could not be from the Reporter's inability to procure the briefs of counsel in time.)

The declaration alleges that the defendant, on and before the first day of April, 1874, was a stockholder in the Pensacola Lumber Company, a corporation formed in the State of New York, under the provisions of the act of the Legislature

of that State, passed February 17, 1848, entitled " an act to authorize the formation of a corporation for manufacturing, mining, mechanical, chemical," &c., purposes, and the various amendments thereof; and that the defendant being such stockholder, and holding $75,000 of stock, or one-fourth of the stock, which was fixed at $300,000 ; and the said company doing business, and having an agent and office in Escambia county ; and the said company being in debt to the plaintiff in the sum of $5000 by promissory note of date September 21, 1874, and the sum of $5,946.20 by another promissory note of date September 21, 1874, and the further som of $2,646.47 by account stated, the said plaintiffs, on the 16th day of February, 1874, instituted their suit against the said company in the Circuit Court to recover the sums due by said promissory notes and account, and the interest and costs ; and on the 15th day of March, 1875, the plaintiffs recovered judgment in said Circuit Court against the said company for the sum of $14,120.50, together with the costs of said suit ; that by reason of the said company being adjudicated a bankrupt by the District Court of the United States for the Northern District of New York in 1875, the plaintiffs were prevented from taking any of the property of the said company under execution in satisfaction of said judgment ; that upon said judgment execution was duly issued, but returned by the sheriff of said county wholly unsatisfied ; that the property of said company has been sold by order of said bankrupt court, and that the proceeds of said sale will not more than pay the costs and expenses of the bankrupt proceedings and of the assignee in bankruptcy, leaving nothing to be applied to the satisfaction of said judgment or to be paid to the plaintiffs and other creditors, and that said judgment has not been and cannot be satisfied, either in whole or in part, out of the assets of said company ; that by the provisions of said act of the Legislature of the State of New York, all the stockholders of said company

are severally individually liable to the creditors of the com-
pany to the amount of stock held by them respectively, for
all debts and contracts made by said company, until the
whole amount of capital stock fixed and limited by such
company shall have been paid, and a certificate thereof shall
have been made, signed, and sworn to by the president and
a majority of the trustees, and recorded in the office of the
county clerk of the county wherein the business of the said
company is carried on; and that the said company failed to
comply with the said provisions of said act, and did not, by
its president and a majority of its trustees, make, sign, swear
to and record such certificate, either in the county of New
York, the county in which the operations of said company
were, by their articles, to be carried on, and their principal
business done, or in the county of Escambia, Florida, in
which said company did business, or in anywise as required
by said act to exempt defendant; wherefore the said de-
fendant became and is liable to the said plaintiffs for the
said debt and said contract made by said company, and the
said plaintiffs claim $28,000.

The other facts are stated in the opinion of the court.

*E. A. Perry* for Plaintiffs in Error.

The General Assembly of New York, by its act entitled
" An act relative to incorporations for manufacturing pur-
poses," and by its acts amendatory thereof, authorized the
formation of associations or corporations for various pur-
poses, and by Sections 10 and 11, pages 24 to 26, provided
how the persons organizing under said act might exempt
themselves from individual liability ; expressly by those sec-
tions providing that such persons, " all the stockholders,"
should remain severally individually liable to the creditors
of the company in which they are stockholders to an amount
equal to the amount of stock held by them respectively, for

all debts and contracts made by such company until the provisions of those sections should be complied with.

Under said act the defendant, with others in the city and county of New York, associated themselves in the name of the Pensacola Lumber Company, and in that character, and without complying with the provisions of Sections 10 and 11, became indebted to the plaintiffs, and by their notes and drafts, drawn and payable in the city of New York, contracted to pay the sum of about $14,000. The said notes not being paid, plaintiffs brought their suit in the Circuit Court for Escambia county upon said notes, and also upon an open account for goods purchased from plaintiffs by the defendant and associates so doing business in the character aforesaid, in which suit the plaintiffs obtained judgment against the Pensacola Lumber Company for $14,121.51. Upon this judgment execution issued, and the said company having upon its own petition been adjudged a bankrupt, and its property having been sold for barely enough to cover the assignee's costs and expenses, the execution was returned wholly unsatisfied.

To plaintiff's declaration defendant interposed his demurrer, the ground taken by demurrant being that the court had no jurisdiction to enforce defendant's liability; it being contended in argument that the liability was a penalty, and one that could not be enforced by courts other than the courts of the State that enacted the statute.

Upon this demurrer the court below gave judgment for the defendant, and plaintiffs sued out their writ of error from this court, and assign for error the court's judgment in favor of said demurrer.

The court below sustained the demurrer principally upon authority of the case of Halsey vs. McLean, decided by the Supreme Court of Massachusetts, and reported in 12 Allen.

The learned Judge of the Circuit Court, admitting from the bench that his impressions were the other way, but with

a modesty, which I respectfully suggest, was inordinate, declined, sitting as a Circuit Court, to array his judgment against the opinion of the Supreme Court of Massachusetts, probably deeming it more appropriate that this court should declare the State's position and policy in respect to the question as to how far the law of New York shall through comity be recognized as operative by the courts of Florida.

The question is now before this court whether the defendant's liability (which, it was not in the court below, and it is presumed will not here be controverted, is a liability which would be enforced in the State of New York,) can be, or should be, enforced by the courts of Florida.

*Argument.*—Defendant claims that this case does not come within that comity which sanctions the enforcement of a foreign law, and relying mainly upon the opinion volunteered by the Supreme Court of Massachusetts, claims that the liability of defendant is a liability created by statute of another State, and a penalty which the courts of Florida cannot enforce.

It is true that the laws of New York have not, *ex proprio vigore*, any extra territorial force, and probably it would be competent for the State of Florida to declare the law involved in this case and all other foreign laws as inoperative and not to be enforced by her courts, but until she does so, the courts are as much bound to recognize the law of comity as any other law of the land.

"Courts of justice in one State will, out of comity, enforce the laws of another State when by such enforcement they will not violate their laws or inflict an injury on some one of their own citizens; as for example, the discharge of a debtor under the insolvent laws of one State will be respected in another State where there is reciprocity in this respect." 1 Bouvier's Law Dic., 244.

The Supreme Court of the United States, in Bank of Augusta vs. Earle, says: " It is truly said in Story's Conflict

of Laws, 37, that 'in the silence of any positive rule affirming, or denying, or restraining the operation of foreign laws, courts of justice presume the tacit adoption of them by their own government, unless they are repugnant to its policy or prejudicial to its interests.' "    13 Peters, 589.

" The extent of comity, that is, the degree of force and obligation the laws of one country have in another, depends solely upon the laws and municipal regulations of the latter, that is to say, upon its own proper jurisprudence and polity, and upon its own express or tacit consent."    Story's Conflict of Laws, §23.

The extent is broad or narrow according to the policy of the particular State.    Ibid., §38.

In the absence of legislation upon the subject, practically it is a comity of courts ; for the exercise of comity in admitting or restraining the operation of a foreign law rests unavoidably in a sound judicial discretion, dictated by the circumstances in the case.    2 Kent's Com., 458, note.

The case of Halsey vs. McLean, if considered an exposition of the will of that State, shows that Massachusetts has taken a contracted, narrow view of this subject, as of some others.

There is no reason why other States, and especially this State, should be restricted to such narrow doctrine.    It will be more in accord with its broad, and liberal policy to follow the advice of Chief-Justice Taney and adopt that " greater degree of comity and friendship " so strongly urged upon the States by the Supreme Court of the United States in Bank of Augusta vs. Earle.    13 Peters, 519, 539, 589.

Upon this subject see also: Hallman vs. Johnson, Cowper, 341; 2 Kent's Com., Sec. 39, marginal page 453 to 463; Holmes vs. Remsen, 4 John. Ch. R., 469; 13 Peters, cited supra, 519, 588-91.

Our State extends to a New York corporation the comity

of suit, and " the right to sue is one of the powers which it derives from its charter."

" If the courts of another country take notice of its existence as a corporation, so far as to allow it to maintain a suit, and permit it to exercise that power, why should not its existence be recognized for other purposes and the corporation permitted to exercise another power which is given to it by the same law and the same sovereignty—when the last-mentioned power does not come in conflict with the interest or the policy of the State?" 13 Peters, 591.

By comity, then, the foreign law is recognized and enforced so far as it gives rights to a foreign corporation to come here and contract and enfore its contracts in our courts; but when the same law is invoked to protect the rights of parties who contract with it, we are told it is not a law within the comity of States. It and its members are bound by its contracts at home; in Florida, although parties contracting with it are as fully bound as though they contracted with it in New York, yet it and its members are not bound. If such is comity, deliver the people of Florida from it. It is too one-sided.

It would seem that if by comity the law of New is recognized and enforced in favor of New York citizens and a New York corporation, it would be the interest and the policy of Florida to enforce the same law to protect her own citizens.

It will be observed that in the celebrated case of the Bank of Augusta vs. Earle, there was not involved any foreign contract.

In the case at bar there is a contract which was made and was to be performed in the State of New York. The law of New York then is to govern " as to the nature, the obligation, and the interpretation of the contract." Story's Conflict of Laws, §263; Mr. Cowen's note, 4th Cowen's R., 635.

The Supreme Court of the United States says: "It is needless to enumerate here the instances in which, by the general practice of civilized countries, the laws of one will, by the comity of nations, be recognized and executed in another, where the rights of individuals are concerned. The cases of contracts made in a foreign country are familiar examples; and courts of justice have always expounded and executed them according to the laws of the place in which they were made; provided that law was not repugnant to the laws or policy of their own country." 13 Peters, 589.

The question as to defendant's individual liability belongs to the nature and obligation of the contract. Story's Con. of Laws, §§263, 266, 267, 278, 286, note 2.

In case at bar contract was a valid contract by stockholder, defendant to pay if his agents, the officers, did not and could not pay. 1 Coms., 47, 59.

The statute sections 10, 11, provided a way in which defendant and associates might avoid the liability, and transfer it absolutely and finally upon the company, but, as to these sections, does not create any new liability, merely keeping alive, until certain acts are done, a common law liability, for the common law favors the personal liability of the members for all the debts of the company, 20 Wend., 616.

The statute, and acts and omissions of the defendant and associates, under it, are a part of every.contract entered into, and every one is presumed to have contracted with the knowledge of the liability of the individual stockholders. 1 Coms., 55-6-7-8-9; Ang. & Ames on Corp., §611, note 5; 2 Hill, (N. Y.), 269. Every contract then amounted to a promise on the part of each stockholder to guarantee payment of the liability to the extent of a certain sum. But the defendant's demurrer altogether rests upon the assumption that his liability is a mere creature of statute, is a penalty.

To support this, he relies principally upon the construc-

tion given to the statute of New York by the court of Massachusetts in Halsey vs. McLean, where it will be seen the court volunteered to construe section 10. We contend that the most competent authority to construe that statute are the courts of New York. It is by the courts of New York well settled that defendant's liability is not in the nature of a penalty, but may be enforced as a contract. Allen vs. Sewall, 2 Wend., 338 ; Moss vs. Oakley, 2 Hill, 265 ; Bailey vs. Bancker, 3 Hill, 188 ; Harger vs. McCullough, 2 Denio, 119 ; ex-parte Van Riper, 20·Wend., 614 ; (this case shows that the more liberal State of New York has not adopted the narrow, contracted view of Massachusetts as to comity between the States) ; Corning vs. McCullough, 1 Coms., 47 ; above cases cited in Bk. of Plymouth vs. Price, 33 Md., 493 ; Ang. & Ames on Corp., §611.

The construction of the statute by the New York courts would be binding upon the Supreme Court of the United States. Green vs. Lessee of Neal, 6 Peters, 291–7–8–9. Why then should it not bind the courts of Florida ?

But the New York construction is the natural and logical construction as to the liability under sections 10, 11, here sought to be enforced.

Defendant with associates, at the time of contracting with plaintiffs, contracted through their agents, the officers of an inchoate corporation, and were liable upon their contract as if no attempt had been made to become incorporated. Angel & Ames on Corp., §611 ; Allen vs. Sewald, 2 Wend., 327.

They continued as individuals liable for all the contracts they, through their said agents, might make, until their inchoate and qualified, should become a complete, unqualified corporation, one of the principal common law attributes of which is the total exemption of the individual corporators from liability.

Parties contracting with defendant and associates are presumed to have known the anomalous character in which de-

fendant and associates were contracting, and to have contracted with them in that character.

The statute is a part of the contract—a part which, at different times, might be of different force and effect; but, as to the case at bar, it appears that when contract was made between plaintiffs, and defendant and associates, the latter were individually liable for the promises made by them through their agents. As to liability under other sections, for instance section 12, that is a liability arising after the exemption of individual liability had once been complete; and it may well be, as it is, considered a liability created by statute, and in the nature of a penalty for a default, for the liability did not exist until the default; but as to the liability sought to be enforced here, the defendant was "answerable as an original and principal debtor," in the language of Judge Bronson, in Corning vs. McCullough, cited, and continued to be so answerable until he, through his agents, should relieve himself from such liability by substituting a full-grown artificial person to assume the liability.

The failure to do certain acts did not make but left the stockholders subject to a natural and original liability for their contracts — a liability from which they might have exempted themselves by the doing of those acts, that is, by creating, with notice to the world, a fund out of which creditors could satisfy their claims.

The distinction between the liability of a stockholder under sections 10 and 11, and the liability of an officer for failing to perform a duty, for instance the liability under section 12, is clearly stated by the Superior Court of New York in Bird vs. Hayden: "A personal liability for debts or a corporation, imposed by its charter upon its officers for failing to perform a duty with which they are charged, is *quasi penal*, and therefore the courts of this State have no jurisdiction to enforce such liability when the charter creating it was granted by another State; but the personal liability

SUPREME COURT.

of the stockholders by statute arises out of their original liability if they had not been exempted therefrom by such statute. An action against them is, therefore, upon their contract in a qualified corporate capacity." 1 Robertson, 383.

Many cases are found in the New York reports in which the courts hold that the liability of an officer for failure to perform a duty is in the nature of a penalty, but no case in which it is intimated that the liability of stockholders, under sections 10 and 11, is of that character. That such liability was limited by the interest each stockholder held in the business does not change the character of the liability—such limitation was a part of the contract. Story's Con. of Laws, §§263, 316, b., 320, a., 322.

The statute, and the New York courts construction of it, and the fact that the defendant was acting in an inchoate "qualified corporate capacity," with no immunity or exemption from personal liability, entered into all contracts, and fixed and limited the extent of liability in the same way and to the same extent that the mandate enters into the contracts of agents and fixes and limits the liability of the principals. Has that part of contract comprised in the statute any less force than if attached literally and bodily to every contract made by defendant?

The plaintiffs contracted with defendant and associates on the faith of the surety set forth in the statute as part of contract, and they trusted as well to the personal liability of defendant as to responsibility of corporation for fulfillment of the engagement. 1 Coms., 55.

The provision that the plaintiffs must first obtain judgment against the corporation, does not effect their rights to the personal liability of the defendant stockholder. Nor does it prevent the liability of the defendant to plaintiffs from attaching and becoming perfect on consummation of the contract of the creditors, the plaintiffs, with the corporation. It simply defers the remedy. Corning vs. McCullough, 1

Coms., 47; Harger vs. McCullough, 2 Denio, 119-124; Moss vs. Oakley, 2 Hill, 265-270; Angel & Ames on Corp., §611, note 5. And the construction of the statute, by the courts of New York, entered into and became a part of the contract, and defendant became bound by that construction. Or consider the defendant in the light of a guarantor—he promised to pay debts contracted by the company to extent of $75,000. Is not that a contract that the courts of any State ought to enforce? Nor is it any answer to say the defendant's liability was limited and conditional under the laws of New York. Story's Conflict of Laws, §§263, 322, 322, b. If the contract created a personal liability in New York, that liability follows the contract and person everywhere. Ib., 322. Consider the case of an endorser. Ib., §316, b. A limited or special partnership. Ib., §320, a. And whether partner is liable in *solido* for proportionate share. Ib., §322.

There can be no doubt that defendant's liability is in the nature of a contract; that it is governed by the law of New York, as interpreted by its courts; that to refuse to enforce that liability would be to totally ignore the plainest and best established rules of construction and law of comity as to commercial transactions.

The plaintiffs confidently insist there can be no doubt that the courts of Florida are, even by the narrowest doctrine of comity, bound to enforce that liability, as it would be enforced in the place where the contract was made, and was to be performed. But should there be any doubt in the mind of the court, it is safer, in view of the commercial relations between the States of this Union, to enlarge, rather than restrict, the beneficent law of comity.

It resting with each State, and practically with the courts of each State, to adopt either a narrow or a broad and liberal policy and doctrine of comity, it is confidently believed that the courts of this State will adopt the latter;

and that this court will not, in the exercise of its discretion, hesitate to take a step in that direction, and will not be deterred by the steps in an opposite direction taken by the courts of Massachusetts, and perhaps one or two other States.

Whether this court will recognize the " enlarged comity " urged upon the States by the Supreme Court of the United States, depends upon its discretion—a " rule of decision, and not a question of jurisdiction." Holmes vs. Remsen, 4 John. Ch. R., 471. And inasmuch as the court's " discretion is to be dictated by the circumstances in the case," no more forcible dictation could be imagined than the circumstances in this case. The defendant, by comity, is authorized to act here in the character which is given to him by New York laws, and in that character obtains plaintiffs' goods, upon the pretense and showing of an individual liability. Is he to be permitted to come into a court of Florida and say, because my contract consisted in part of a statute of a foreign State, it is not binding in Florida, and Florida courts will not enforce it? Defendant comes into the State, holding out that he is liable for his contracts, as he would be in New York, and after having obtained all the credit he could from the citizens of Florida, has, through the form of the bankrupt law, transferred all the property, which he held in the character of an inchoate corporation, to himself as a natural person; and when his creditors seek to enforce the liability, upon the credit of which the property was created, they are told it is not the " policy " or the " interest " of Florida that its courts should enforce contracts and justice in behalf of its citizens—which, if we reverse the position and circumstances, we see from 20 Wendell, 614, and 1 Rob., 383, the courts of New York would enforce in behalf of its citizens against citizens of Florida.

*R. L. Campbell* for Defendant in Error.

This action is founded on the 10th section of the New York incorporation act of 17th February, 1848; and was brought by the plaintiff in error to recover three debts, one contracted in Louisiana, and the others in New York, by the Pensacola Lumber Company, a corporation organized in the State of New York, under that act, of which corporation the defendant was a stockholder.

The declaration, after stating the above facts, and that a judgment had been obtained against the corporation, on which execution had been issued, and returned *nulla bona*, recites : " That under the provisions of said act of the Legislature of the State of New York, all the stockholders of said company are severally individually liable to the creditors of the company, to the amount of stock held by them respectively, for all debts and contracts made by said company, until the whole amount of capital stock fixed and limited by said company shall have been paid in, and a certificate thereof shall have been made, signed, and sworn to by the president and a majority of the trustees, and recorded in the office of the clerk of the county wherein the business of said company is carried on.

A failure to make and record the required certificate is also alleged ; and, " wherefore, the defendant became liable to pay the said debt and contract by said company."

The Circuit Court did not err in sustaining the demurrer to the declaration.

Official neglect of a duty, imposed by the laws of another State, is the gist of the case against the defendant.

No such case can, under the rule of comity, be maintained in the courts of this State.

The 10th section (page 24) of the New York statute, on which this case is founded, does not impose any liability upon the persons composing the stockholders, as in the case

of the Rossie Galena Company, Corning vs. McCullough, 1 Comst., 47.

But treating the corporation as created under section 2, (page 17) the 10th section attaches to its components, *qua* stockholders, certain individual liabilities.

1. Stockholders are severally individually liable to the amount of each one's stock, until the entire amount of the capital stock of the corporation is paid in.

2. Stockholders are so liable, although the entire capital stock be paid in, upon the failure of the officers to file the required certificate.

This case is not founded on the first predicate of the 10th section, and therefore no supposed equity, growing out of the defendant's failure to pay his quota of the capital stock of the corporation, can be urged against him.

His liability, if any, falls under the second predicate, and as a consequence of official default of others.

Again, this being a case involving both a foreign creditor and a foreign corporation, no argument in favor of jurisdiction can be founded on the policy of enabling home creditors to enforce such liabilities against resident or sojourning stockholders as was, ineffectually, urged in Bird vs. Hayden, 1 Rob., 383.

The expositions which the statute has received from the courts of New York and other States show that the liability sought to be enforced does not rest upon any contract, express or implied, involving a common law obligation, binding the stockholder either individually or jointly with others.

He is not liable as a copartner. Woodruff & Beach Iron Works vs. Chittenden, 4 Bosw., 417; and yet such would be the shape of the liability if it came from the common law.

The common law knows nothing of a liability attaching to two or more associates in business, individually and sev-

erally, not jointly, not co-extensively with the debts, but meted out to each associate by the accidental measure furnished by the amount of his stock, and that too, finally dependent upon the failure of the trustees to make and file a certificate.

Again, there exists no original, absolute, individual liability on the part of any stockholder to any creditor; for payment by a stockholder of a debt, equal in amount to his stock, to one creditor, is a bar to an action against him by any other creditor of the corporation. Ibid. Eaton vs. Aspinwall, 19 New York, 119.

One creditor "may sue alone, although there may be other creditors similarly situated." Weeks vs. Love, 50 New York, 368.

"The defendant's liability does not arise from any act connected with the creation of the debt." Merchants Bank of New Haven vs. Bliss, 1 Rob., 391.

"It is difficult to imagine a liability more wanting in all the features of a contract, or more fully possessing those of a penalty." Ibid.

That was an action, like Derrickson vs. Smith, (3 Dutch., 166,) against trustees, under 12th section of the statute, (page 26) to make them liable for the debts of the corporation in consequence of their failure to publish the annual report.

That the liability in this case is sought to be fixed upon a stockholder for a different act of official negligence, does not change the nature of the liability. *

In this case, as in those, official default is the ground of the liability. What was said of the declaration in Derrickson vs. Smith, is equally applicable to the declaration in this case: "The declaration, although nominally upon promises, negatives all promises, and claims a liability upon a mere default."

If to make the officers liable for the debts of the company,

in consequence of their having left undone something required by law, is in the nature of a penaly, it is a harsher penalty to visit such liability on a stockholder, whose only fault may have been misplaced reliance on such officer.

In Bird vs. Hayden, 1 Rob., 383, the court says: "But where there is no qualification to the corporate capacity of the company, and where the stockholders are not answerable to the creditors of the company as original and principal debtors, but they or the officers become liable, by reason of some act, the performance of which is imposed on them by the statute, then the action must be upon the statute to recover a debt in the nature of a forfeiture for a failure to perform a duty."

In Halsey vs. McLean, 12 Allen, 438, which, like this case, involved a liability under the 10th section, such liability was regarded by the Supreme Judicial Court of Massachusetts as being in the nature of a penalty.

Corning vs. McCullough, 1 Comst., 47, illustrates what is an original liability founded on the debt.

Bird vs. Hayden, Woodruff and Beach Iron Works vs. Chittenden, Merchants' Bank of New Haven vs. Bliss, *supra;* Jones vs. Barlow, 62 N. Y., 202 ; Lawler vs. Burt, 7 Ohio St., 341 ; Kritzer vs. Woodson, 19 Mo., 327; Hill vs. Frazier, 22 Penn., 320, shows that where a liability is the immediate consequence of the failure of officers of a corporation to perform a duty imposed on them by statute, such liability is a *quasi* penalty.

Courts of other States will not enforce such a liability. Bird vs. Hayden, *supra;* Halsey vs. McLean, 12 Allen, 438; Derrickson vs. Smith, 3 Dutch. ; 27 N. J., 166 ; Bank vs. Price, 33 Md., 487.

But aside from the penal character of the liability, it is not only of purely statutory origin, but for its enforcement regulations are prescribed unknown to the common law, the statute law, and the rules of procedure of this State.

Flash, Lewis & Co. v. Conn—Argument of Counsel.

Under our practice the note of one party cannot be en-forced by an action against another who is not a party to such note; nor is judgment against one a condition prece-dent to obtaining a judgment against another who is not a party to the first.

Tested, therefore, by our rules of procedure, the declara-tion presents no cause of action against the defendant.

The remedy so regulated by the 24th section (page 34) of the N. Y. statute is inseparable from the liability, and that remedy falls without the pale of comity. Pickering vs. Fish, 6 Vt., 102.

It was this consideration that led the Supreme Court of Massachusetts, in Halsey vs. McLean, to say of that statute: " It must be regarded as a part of the statute system of an-other State incapable of execution, *alieno foro*." See Erick-son vs. Nesmith, 46 N. H., 371, page 378.

*E. A. Perry* in reply.

Defendant's first attack is upon the wording of the con-clusion of the declaration, "wherefore he became and is liable," &c. The conclusion is not now a material part of any pleading. The facts alleged in it determine its charac-ter and sufficiency.

The word "wherefore" in the declaration does not, how-ever, as considered by defendant, relate only to the allega-tion that said defendant and associates had not taken the steps necessary to exempt them from individual liability, but it relates to all the facts set forth in the declaration—the making of the contracts, the failure of the company to pay, and of the judgment to be satisfied.

As in case of declaration upon policy of insurance. There would be set forth a contract by the insurer to pay upon the happening of certain contingencies, as for instance, the burn-ing of the property insured, the making of the proofs by the

insured, the lapse of the sixty days thereafter as the contract might provide, and the declaration would properly close with the words, " wherefore the insurer became and is liable to pay," &c. The insurer was *bound* by his contract from the time it was made, but did not become *liable* to pay until the happening of the contingencies.

The plaintiffs fail to find in either of the authorities cited by defendant, viz: 6 Vt., 102, or 3 Dutch., 391, anything to sustain defendant's objection to the declaration in this respect—an objection raised here for the first time since the passage of the Pleading and Practice Act, as far as I have been able to learn.

" But there is a class of actions and causes of action which involve statutory provisions in a greater or less degree, but which, though the statute is a necessary link in the chain of title to the remedy, and they may, to some intents, be said to be under the statute, are not, in the legal acceptation of the terms, actions upon the statute." 1 Coms., 65.

Defendant next claims that by section 2, (page 12, of the act,) the defendant and associates became clothed with the full character and attributes of a corporation, and that section 10 imposed upon them liability for the failure of the officers to do a certain thing. This claim is fully answered by the New York Court of Appeals, (1 Coms., 57–8,) and by considering that to relieve themselves from a liability from which they had never been exempt, was a privilege allowed but not a duty required, the non-performance of which *created* or *imposed* upon them a liability which did not pre-exist. And here it may be remarked that defendant assumes too much in assuming that the capital stock fixed and limited by the company had been paid in. There is nothing in the record to authorize such assumption.

When the law requires that the doing of any act shall be evidenced in a particular way, the denial of such evidence would certainly not raise any presumption that the act had

been done.   The presumption here is that the stock was never paid in, for had it been it is presumed the company, through its officers, would have taken the necessary steps to make it known to the world.

Defendant argues that there is a distinction between the liability in case of Rossie Galena Co. before the court in 1 Coms., and that here under section 10, and cites Woodruff & Beach Iron Works vs. Chittenden, 4 Bosw, 417, to break the force of the former decision.   The only difference is that the *burden left upon* the stockholders is lighter in the one case than the other.   In the former case the court simply held that the stockholders were *inter se like* partners.   The court could not and did not hold that their liability was the common law liability of partners—it was joint and several, very different from partnership liability under the law. Page 60.   And the court in 4 Bosw. very properly noted that the liability under section 10 was not joint, and consequently there was nothing that prevented one stockholder from suing another.   In this particular only did the court hold there was difference.   It did not hold that the character and nature of the liability, in respect as to whether in the nature of contract or penalty, was different in one case from the other.   There is not a word in the court's opinion that intimates that the liability is in the nature of a penalty; nothing to show that the reasoning of the court in 1 Coms., as to the *nature* of the liability, does not in every respect apply to the liability under section 10, here sought to be enforced.

In reply to defendant's claim that the liability is not a common law liability, read 1 Coms., 60–1.   Many liabilities arising from foreign contracts which are not common law liabilities are enforced — instance that given on page 60, 1 Coms.   Likewise the liability of a partner upon a firm contract, made where the law makes partners liable only for a proportionate share; or where the law authorizes a limited

partnership; the case of endorsers, acceptors, and sureties, whose liabilities depend upon the *lex loci* contractors, and are enforced, whether common law liabilities or not.

Making the burden more or less onerous than under the common law does not effect the principle. Harger vs. McCullough, 2 Denio, 124; 1 Coms., 60. The question is whether the liability grows out of a contract, express or implied, or is a mere statute liability in the nature of a penalty? How can it be said that a thing which always existed was imposed as a penalty?

In the case of Pickering vs. Fisk, cited by defendant, the suit was upon a "penal bond," (page 102,) and there was, and could be, no pretense that there was any contract into which entered the statute of New Hampshire, (page 109.) The person for whose benefit the suit was brought was a perfect stranger to the bond; not so here, where the suit has "for its object the recovery of a debt for goods sold to a company, of which the defendant was a member and personally liable for the payment of its debts, and which action, in no just sense of the term, partakes of the character of either forfeiture or penalty." 1 Coms., 61.

Consider the case of Bird vs. Hayden, and the language from which defendant derived so much comfort, viz : " But where there is no qualification to the corporate capacity of the company, and where the stockholders are not answerable to the creditors as original and principal debtors ; but they or the officers become liable, by reason of some act, the performance of which is imposed on them by the statute ; then the action must be upon the statute to recover a debt in the nature of a forfeiture for a failure to perform a duty."

There was a qualification to the corporate capacity of the company, of which defendant was a member, which left the stockholders answerable to the creditors as original and principal debtors, (for, by the head notes of the case which was reported by Chief Justice Robertson, " The personal liability

of stockholders by statute arises out of their original liability, if they had not been exempted therefrom by such statute," and stockholders in case at bar had not ever been so exempted,) and inasmuch as they had never been exempted, they did not become liable by reason of any act, the performance of which was imposed upon them by the statute; consequently the action is not to recover a debt in the nature of a forfeiture for a failure to perform a duty, and " an action against them is, therefore, upon their contract in a qualified corporate capacity."

The case of Merchants' Bank of New Haven vs. Bliss establishes what plaintiffs long have admitted, that the liability for debts of a corporation imposed by its charter upon its officers, for failing to perform a duty with which they are charged, is *quasi penal*. Likewise Jones vs. Barlow, 62 N. Y., 202, which is a case under penal Section 12.

We come now to Lawler vs. Burt, 7 Ohio St., 341, upon which defendant so much relies, and which plaintiffs consider another good authority to establish the difference between the liability of stockholders who have never been exempt by statute, and the liability which is imposed as a punishment for doing a wrongful act, as in this case for breach of the statute, " to prohibit the issuing and circulating unauthorized bank paper." This case very properly holds that doing this unlawful act is a tort, and the liability imposed as a punishment therefor is a penalty.

The same may be said of the case of Kritzer vs. Woodson, 19 Mo., 327, which holds, as would the New York and all other courts, that the liability imposed upon officers for permitting indebtedness in excess of capital stock, was a punishment for doing a prohibited act.

So also the case of Hill vs. Frazier, 22 Penn., 320, where the officers' liability was imposed upon them as punishment for making dividends out of capital stock.

Bank of Plymouth vs. Price, 33 Md., also holds: " That

29

the liability imposed upon the directors and officers of such corporations is in the nature of a penalty." Here also the liability was imposed as punishment for doing a prohibited act, *i. e.*, permitting debts and liabilities to exceed the amount of the capital stock.

The case of Derrickson vs. Smith, 3 Dutch., 166, is another good authority for the distinction between the liability here sought to be enforced, and the liability under the penal section of the act (see pages 169, 174, 176); and this case, (page 169,) and the case of Bank of Plymouth vs. Price, 33 Md., on page 453, admit the law to be settled by the New York courts as claimed by plaintiffs.

So of all the authorities cited from other States, there is not one that holds that the liability, such as is here sought to be enforced, is in the nature of a penalty rather than in the nature of a contract, except the case of Halsey vs. McLean; and as to this, plaintiffs, with due deference, submit, that if the court had confined itself to the question involved it would have ruled in conformity to the decisions of the New York courts.

The auditor or referee found the defendant liable as trustee under Section 12, and the court below confirmed such finding. The Supreme Court had nothing to do but reverse the judgment, because the liability under that section is held by the courts of New York to be, what it undeniably is, in the nature of a penalty; and also because the contingencies had not happened which made it obligatory upon defendant to pay. All of the decisions beyond that may be considered as the mere opinion of the judges of that court upon a law of the State of New York.

The defendant then has failed to find any authority even outside of New York, and certainly finds none from the courts of New York, to justify the denial of the proposition that the personal liability of the stockholder defendant, by section 10, arises out of his original liability, inasmuch as he

had never been exempted therefrom; original, because it has not been imposed, but existed from the first.

Defendant's authorities do show what plaintiffs admit, that where a liability from which they had been at one time exempt is again imposed upon either officers or stockholders for wrongful acts of omission or commission, such a liability is a *quasi* penalty. But no such liability is sought to be enforced in this case.

But the defendant contends that for the enforcement of the liability regulations are prescribed unknown to the common law, the State law, and the rules of procedure of this State. No more than in any other case of contract where the duty to perform, to execute a liability on one side, and the right to demand the performance and enforce the liability under the contract on the other side, is deferred till the happening of certain contingencies. This is all a part of the contract. As in case of a guaranty that a certain debt will be paid where it enters into the contract that the creditor shall first exhaust his remedy against the principal, and in a multitude of cases that will readily present themselves to the mind of the court.

Indeed, under our practice the note of a party might be enforced by an action against another whose name did not appear as a party to such note. Suppose a case where, under the laws of the place where the note was made, certain relationship made the maker of the note agent for the party against whom action was brought.

And there might be many cases where, under a contract, it would be necessary to obtain judgment and return of execution unsatisfied, as condition precedent to demanding and enforcing the performance of an obligation against another whose name does not appear as a party to the first.

The authorities cited in plaintiffs' brief show that these are all matters of contract; so is the limitation provided in sec-

tion 24, which seemed such a stumbling block in Halsey vs. McLean.

In the case of Riddlesbarger vs. Hartford Insurance Co., where there was, as here, a limitation prescribed by the contract, it was argued as it is argued here that the limitations contravene the policy and statutes of the State and cannot be enforced. But the Supreme Court of the United States take a different view, and enforce it as a part of the contract. 7 Wal., 386.

There is no requirement that the judgment should be obtained in the court in which the stockholder is sued. So the obtaining a judgment, and failing to satisfy it from the company, is no part of the remedy, but is one of the contingencies which must happen before the stockholder can be called upon to perform his contract. It is no part of the " procedure " against the stockholder, and no different procedure is necessary against him than that provided by the rules and practice of the courts of Florida.

The effort to collect the debt from the company required here, is no more a part of the remedy than the requirement in the charter before the court in ex-parte Van Riper, that demand should be made at the bank during the usual hours of business.

So at last, as was the question in the court below, the question is: Is the liability here sought to be enforced a liability imposed as a penalty, or is it a liability in the nature of a contract?

When described as an original liability by the New York courts, the term " original " is used in contradistinction to the term imposed, and if it existed from the first, it is, as held by the New York courts, " original," and not imposed as a penalty or forfeiture.

THE CHIEF-JUSTICE delivered the opinion of the court.

Plaintiffs in error sued defendant, and alleged that defendant was a stockholder in the Pensacola Lumber Company, a corporation formed in the State of New York under the provisions of an act of the Legislature of that State entitled " an act to authorize the formation of corporations for manufacturing, mining, mechanical, or chemical purposes," and the amendments thereto ; that the defendant is a stockholder in said company, holding stock to the amount of $75,000, being one-fourth of the entire amount of stock of said company ; that said company did business and had an agent and office in Escambia county, Florida; that the company in 1874 was indebted to the plaintiffs in certain notes and in account stated; that in March, 1875, they recovered a judgment upon such indebtedness in said Escambia county for upwards of fourteen thousand dollars, upon which judgment execution was issued and duly returned unsatisfied for want of property on which to levy ; that by the provisions of said act of the Legislature all the stockholders of said company are severally individually liable to the creditors of said company to the amount of stock severally held by them for its debts until the whole amount of the capital stock shall have been paid, and a certificate thereof shall have been made, signed, and sworn to by the president and a majority of the trustees of said company, and recorded in the office of the county clerk of the county wherein the business of said company is carried on, and the declaration avers that the president and a majority of the trustees of said company did not make, sign, swear to, and record such certificate as required by said act, to exempt the defendant from liability, wherefore the said defendant became liable to the said plaintiffs for said debt and the contracts made by said company, &c.

To the declaration the defendant demurred—first, that it

does not set forth any cause of action; second, that it does not set forth a cause of action cognizable by this court. The court sustained the demurrer.

The sections of the act of the Legislature of New York, referred to in the pleadings and upon the argument of the cause, are as follows:

" SEC. 10. All the stockholders of every company incorporated under this act shall be severally individually liable to the creditors of the company in which they are stockholders to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such company, until the whole amount of capital stock fixed and limited by such company shall have been paid in, and a certificate thereof shall have been made and recorded as prescribed in the following section:

" SEC. 11. The president and a majority of the trustees, within thirty days after the payment of the last instalment of the capital stock so fixed and limited by the company, shall make a certificate stating the amount of the capital so fixed and paid in, which certificate shall be signed and sworn to by the president and a majority of the trustees; and they shall, within the said thirty days, record the same in the office of the county clerk of the county wherein the business of the said company is carried on."

" SEC. 24. No stockholder shall be personally liable for the payment of any debt contracted by any company formed under this act which is not to be paid within one year from the time the debt is contracted, nor unless a suit for the collection of such debt shall be brought against said company within one year after the debt shall become due; and no suit shall be brought against any stockholder  *  * until an execution against the company shall have been returned unsatisfied in whole or in part."

The demurrant insists that " official neglect of a duty imposed by the laws of another State is the gist of the case

'against the defendant," as the case is stated in the declaration, and says the 10th section attaches to the components of the corporation certain individual liabilities—" First, *stockholders* are severally, individually liable to the amount of each one's stock, until the entire amount of the capital stock of the corporation is paid in;" and "second, stockholders are so liable, although the entire capital stock be paid in, *upon the failure of the officers* to file the required certificate."

The position is that the liability is one created by the statute of another State, and is one *imposed by* such statute in consequence of the failure of certain officers to perform a required duty, and is therefore a *penalty* prescribed by such foreign statute, and that the courts of this State cannot enforce such penal statutes. If this deduction is correct, that this liability is a penalty, and not arising strictly out of contract, we are not prepared to deny the demurrant's conclusion.

The case of Bird vs. Hayden, (1 Robertson, N. Y., 383,) cited by defendant's counsel, was a suit in New York against a director of a manufacturing corporation created under the laws of Massachusetts. A provision of the act required that the officers should annually make and file a certain certificate of the condition of the company, and *in case of neglect* the officers were declared by the act to be jointly and severally liable for the payment of the debts of the corporation created after such neglect and before the filing of the certificate. The court held that actions to recover penalties created by the statutes of other States, being local, are not cognizable by the courts of New York. (14 John., 338; 17 John., 4; Story Comfl. Laws, §§620–621.) The court says there is nothing in the act of incorporation of this company which rendered the directors or stockholders liable in the first instance for the debts of the company, as there is in the general banking law and other laws of that State.

There is no personal liability if the company fails to pay, and hence there is no right of action against the stockholders for any debt contracted by the company so long as the officers discharge the duties imposed upon them by law. It is only upon their neglect or refusal to perform their duty that they render themselves liable. The court adds: "The personal liability of stockholders, where they are made liable by the charter or act of the Legislature, is from the *inception of the debt.* They became originally liable, and the happening of no event is necessary to charge them. The company is invested with a qualified corporate capacity, but no immunity or exemption from personal liability for the debts of the company. In these cases, in judgment of law, the debt is contracted upon the terms and security authorized by the statute, and the creditor having exhausted his efforts to collect from the company, may resort to a common law action directly to the stockholders, not to recover a penalty or forfeiture, nor upon a cause of action in the nature of a forfeiture, but to recover a simple contract debt for which he was liable at the time it was contracted. The action in *that* case is not *upon* the statute, and a mere reference to it is all that is necessary to show the connection of the stockholders therewith, and the liability it creates." But in the case before it the court holds that the personal liability for the neglect or refusal to perform a duty was in the nature of a penalty or punishment, and hence no action could be maintained therefor in the courts of New York.

Counsel for defendant says "he is not liable as a copartner, yet such would be the shape of the liability if it came from the common law," and cites Woodruff & Beach Iron Works vs. Chittenden, 4 Bosworth, 417. There, it is true, the court say the stockholders are not partners; but the court was merely remarking upon the position assumed, that the plaintiff and defendants in the case were *all* stockholders, with a limited liability, whereas as to partners

there was no limit, and, in that case, a judgment against a stockholder in a manufacturing corporation was recovered by a creditor of the company for the use of other stockholders, limited by the amount of his stock. The suit was not brought to recover a penalty, and the court held that the liability was not in the nature of a penalty. In Eaton vs. Aspinwall, (19 N. Y., 119,) the court says the "credit was given upon the faith, not only of the liability of the corporation as such, but ultimately of the several stockholders of its capital. Weeks vs. Love, (50 N. Y.,) merely decides that creditors may sue severally, and holds that when a stockholder has paid debts of the corporation equal to the amount of his stock, he is relieved from further liability. It is also remarked by the court that "the liability is created for the security of creditors."

The Merchants' Bank vs. Bliss (1 Rob., 391,) was an action brought to charge the trustees, not because of any original liability for the debts of the corporation, but for a neglect of duty whereby they were subject to a forfeiture, and this was properly held to be a penal action as for an offence.

In Derickson vs. Smith (3 Dutcher, N. J., 166,) it was held that an action for a liability under section 12 of the New York manufacturing incorporation act, being a liability *imposed* by statute for the *neglect* of the defendant as a trustee to make certain reports, was a proceeding to enforce a penalty prescribed by the Legislature of another State, and the court refused to maintain the suit. The court, however, draws the distinction very plainly between such a suit and one against the individual corporators who are held to be jointly and severally liable for the debts of the corporation. In *such* case (said Elmer, J.,) the stockholders must be considered original parties to the debt, so that their liability attached on the consummation of the contract with the corporation, and so that a provision in the acts requiring credi-

tors first to obtain a judgment against the corporation simply operated to defer the remedy against them until the remedy againt the corporation should be exhausted. And Green, C. J., says: In such case it is held that the stockholders are liable in an original and primary sense, like partners, and that their liability is not created by the statute of incorporation. He *assumes* the liability by becoming a member of the corporation. The personal liability of the stockholder to pay the debt is the immediate and necessary consequence of the contract made by the company. It becomes by the terms of the charter his debt, otherwise of the liability which attaches as a consequence of a violation or neglect of a duty prescribed by the statute.

In Corning vs. McCullough, (1 Comst., 47,) the court, speaking of the character of these corporations, says: It is not a general, unqualified incorporation of the company imparting to the stockholders and members composing it as a legal consequence an exemption from personal liability for the debts and engagements of the body corporate. It is a legislative grant of a special qualified corporate capacity, with adequate plenary powers for the purposes of its institution, but with the personal liability of the stockholders for the debts the company shall contract and the liabilities they shall incur. And Justice Bronson, concurring, said it has been several times held that the stockholders of this and other like companies stood substantially upon the same footing as to liability as though they had been partners or an unincorporated association; that they were answerable to the creditors of the company as original and principal debtors, though the creditors were first to exhaust their remedy against the corporation. 2 Wend., 338; 20 ib., 614; 2 Hill, 265; 3 ib., 188; 2 Denio, 119. The court in Corning vs. McCullough holds that such liability of a stockholder is not in the nature of a penalty.

The question in Lawler vs. Burt (7 Ohio St. R., 340,) was

whether a statute making a stockholder liable for the circu-lating notes unlawfully issued by a company or corporation, other than a bank, was a penal statute, and the court held that it was.

It was held it Kirtzer vs. Woodson (19 Mo., 327,) that the liability under the Missouri statutes, prohibiting an excess of indebtedness over and above the capital stock of an in-corporated company, was penal, and not arising out of con-tract, and a stockholder could not recover from a director.

The suit of Jones vs. Barlow (62 N. Y., 202,) was against trustees for a failure to make an annual report, and not up-on any original liability of the trustees. The liability was imposed as a penalty and not assumed as a contract.

The liability in Hill vs. Frazier (22 Penn. St. R., 320,) was for unlawfully declaring a dividend as one of the direc-tors; a penalty for wrong-doing.

In the First National Bank of Plymouth vs. Price *et al.*, (33 Md., 487,) it was held that the liability imposed upon the directors and officers of a Pennsylvania corporation for unlawfully contracting debts beyond the amount of the capi-tal stock, is in the nature of a penalty, and could only be en-forced in Pennsylvania. The court holds that the liability does not arise out of contract, and says, that while a con-tract made in one State is enforced in other States agree-ably to the law of the State where it is made, it is well set-tled that no State will enforce penalties imposed by the laws of other States. The court remarks : "It has been decided by the courts of New York in several cases, and seems now to be there well settled, that where by a statute it is provi-ded that the individual corporators shall be jointly and sev-erally liable for the debts of the corporation, such liability is not inthe nature of a penalty, but may be enforced as a contract."

The court in Vermont, Pickering vs. Fish, (6 Vt., 102,) held that the courts of that State would not take cognizance

of an official bond executed in another State, for the pur-
pose of enforcing it in a peculiar manner unknown to the
common law, directed by a statute of that State, for the
court says "it is not a contract originating in the ordinary
business transactions of men, created for private and indi-
vidual purposes as evidence of private right. If it were
such, it would be transitory as to the persons of the contract-
ing parties, and would be enforced in any jurisdiction where
the legal obligation of contracts is recognized. It is a gen-
eral rule that courts of all civilized nations will enforce con-
tracts executed in foreign States where the parties are with-
in their jurisdiction ; and for this purpose will have regard
to the laws of the place where the contract may be made."

Thus far we have examined all the authorities cited by
the defendant in error, in the order in which they are re-
ferred to in the argument, excepting the case of Halsey vs.
McLean, 12 Allen, 438. We cannot take issue with any of
these decisions excepting the latter, which, in our judg-
ment, is antagonized and opposed by every other case re-
ferred to by either counsel. In that case, the defendant
was sued in Massachusetts as a stockholder of a New York
company, (organized under the same act of the Legislature
of New York under which the present suit originated,) by a
creditor of the company. The court says, referring to the sec-
tions of the incorporation act, "These provisions, likewise,
have been declared by a New York court (4 Bosw., 417,)
not to render the stockholders chargeable as co-partners.
The liability for non-payment of the capital stock is limited,
in the case of each stockholder, to an amount equal to his
stock ; and to an action founded on §10, it would be a de-
fence available to any shareholder that he had already paid
debts to that amount." And the court was " of the opinion
that the liability of stockholders for debts due to laborers,
*   *   qualified, as it is, by the provisions as to the remedy
in §24, must be treated as a part of the statute system of

another State, incapable of execution *alieno foro*." The court does not tell us why, if the shareholders are *not* partners, or chargeable as co-partners; or why if the liability is limited to the amount of unpaid capital stock; or why, if the liability is limited to debts contracted to be paid within a specified time, and conditioned upon a suit being first brought against the company within a year after the debt becomes due; why it must follow that the contract cannot be executed *alieno foro*.

Suppose the law of New York limits the liability upon civil contracts made in that State to the term of six years from the accruing of the cause of action, is that such a *qualification* of the liability that the courts of another State will not enforce the contract within six years? Or suppose by the law of New York an action cannot be maintained against a surety, or guarantor, until a recovery against the principal, is that such a qualification of the liability that the courts of another State will not entertain a suit against the surety after judgment against the principal? Or if the liability is limited by statute to a certain pro rata amount of indebtedness, contracted by several individuals, or by a corporation, is that such a qualification that the liability will not be enforced in another State? And yet, if we understand the court in Halsey vs. McLean, it is the opinion of the court that in either of these cases the statute has so qualified the liability the courts of another State will refuse to enforce it. The court further remarks that it regards the principles laid down in Derrickson vs. Smith, (15 Gray, 221,) as applicable to all the provisions of the New York act, which they examined in that case.

Turning to the case of Derrickson vs. Smith, we find that the Massachusetts court refused to entertain a suit where the liability arising under the charter of a New Hampshire corporation could be enforced by the law of New Hampshire

*only by bill in chancery*, a law which the Massachusetts courts could not recognize as binding upon them, and in the nature of things only valid in New Hampshire, as it prescribed the particular form in which the remedy must be sought, the court holding "that when a statute creates and prescribes a remedy, that remedy is exclusive, and no other can be pursued." We cannot regard the New Hampshire decision as laying down any principle applicable to the case at bar which will preclude the courts of that State from entertaining this plaintiff's suit. The ruling of the courts of New York, where the company was incorporated, is to the effect that the stockholders are liable by the terms of the act of incorporation, which is the substance of their contract, in the first instance, for the debts of the company, not as insisted by defendant, *upon the failure* of the officers to file their certificate; but are so liable to the amount of their stock *until* the happening of a certain event, for all the debts contracted to be paid within one year after suit and execution against the company in its corporate capacity. These terms are but *limitations* of the liability which was incurred by the contracting of the debt, and do not create liabilities *depending* upon any other event. A statute of limitation is not a qualification of a contract, so that the liability depends upon the happening of any event, but the event or lapse of time merely relieves against a suit; the right to a remedy ceases to exist. The limitation is for the benefit of the stockholder and a means of relief, and not a condition of liability.

A surety may sometimes demand that legal remedies shall be first exhausted against his principal before he shall be compelled to pay, but this is because the surety is already bound, and not because the liability is not fixed by his contract; *that* is operative already, and dependent upon nothing but its own condition. The stockholder here is a surety of the company of which he is a member, and his liability

as a surety is a part of the contract entered into by becoming a member of the company. No event was necessary to charge him as a member except the contracting of a debt to be paid within one year, upon which suit must be brought within one year after the debt is due; and if this is not done he is discharged. This, and the amount of his unpaid stock, merely limit the personal liability upon the contract.

We have seen by the decision of the courts of New York already cited, that the personal liability of the stockholders, when they are made liable by the terms of the charter or act of incorporation, is from the inception of the debt. They are originally liable, and the remedy upon this liability may be enforced after the creditor has exhausted his efforts to collect from the company. Bird vs. Hayden, 1 Rob.; Eaton vs. Aspinwall, 19 N. Y.; Weeks vs. Love, 50 N. Y.; Derrickson vs. Smith, 3 Dutcher, N. J.; Corning vs. McCullough, 1 Comst.; Bank vs. Price, 33 Md.

In Van Riper, ex-parte, (20 Wend., 614,) the court say : " The charter does not confine the creditor to any particular remedy. It raises in his favor a debt against an individual, and leaves his remedy to the general methods of the law. This view also answers another objection, that the remedy given by the charter is local to the State of New Jersey. The charter, in fact, institutes no remedy. It binds Van Riper as a debtor. It raises a debt against him, which may, in its own nature, be enforced wherever the debtor or his property can be found, according to the forms of law at the place where found."

In a suit against a stockholder of the Rossie Galena Company, where, by the charter, the stockholders were " jointly and severally, personally liable for the payment of all debts or demands contracted by the said corporation," but could not be sued until a judgment had been recovered against the corporation, and an execution returned unsatisfied, it

is held that the stockholders in their individual, as well as their corporate capacity, were principal debtors. Hayer vs. McCullough, 2 Denio, 119 ; Moss vs. Oakley, 2 Hill, 265 ; Bailey vs. Baucker, 3 Hill, 188.

In these cases, as in ex-parte Van Riper, and in Corning vs. McCullough, the individual liability extended to all debts of the company, while in the case at bar the extent of the liability was limited by the charter to the amount of the capital stock owned by the defendant. In neither case is it apparent that the liability is in the nature of a penalty, and there is as much show of reason for classing it as a penalty in one case as in the other.

The defendant's liability as a stockholder, under the articles of association, clearly rests in contract and not in tort, or dependent upon the conduct of the officers or agents of the company, but only upon the non-payment of the debt by the principal debtor, and limited by the amount of his stock. If he has paid any of the debts of the company, that is matter of defence under his contract.

We discover no substantial objection to the form of the allegation in the declaration. The gist of the action is the indebtedness of the company, the suit and judgment against the company unsatisfied, the amount of the defendant's stock and the fact that the liability has not been extinguished by the making and filing of the certificate as prescribed by the articles.

The judgment must be reversed, and judgment entered in favor of the plaintiffs upon the demurrer, and such further proceedings may be had according to law and the practice of the court as the parties may be advised.

On the 16th day of March, 1878, after the adjournment of the court, which adjourned on the 13th day of March, the appellee filed the following petition for a re-hearing :

Flash, Lewis & Co. v. Conn—Petition for Re-hearing—Opinion of Court.

*To the Judges of the Supreme Court:*

The appellee in the above cause, the said Adna O. Conn, prays and petitions to your honors for a re-hearing of the above entitled cause, lately, to-wit: on the 13th day of March, A. D. 1878, decided by this court, and assigns as a ground for said petition that there was no final judgment or other judgment in the Circuit Court in the said cause from which a writ of error or appeal could legally be prosecuted or taken to this court; and that this court, in rendering its judgment and decision herein, failed and omitted to consider this fact, and to render its decision and judgment accordingly; and that on this account and for this reason the decision and judgment of this court in said case is, by the petitioner, under the advice of his counsel, believed and supposed to be erroneous. Your petitioner therefore humbly prays and petitions your honors for a re-hearing of the same, and will ever pray.

At the *June Term, A. D.* 1878, the following opinion denying the petition was pronounced by THE CHIEF JUSTICE:

Some days after the adjournment of the last term of this court, during which this cause had been fully argued by counsel on both sides, and a decision made and opinion filed therein, a petition for a re-hearing was filed at the instance of the counsel for appellee. The ground upon which the re-hearing was prayed was that no final judgment had been entered in the Circuit Court from which an appeal or writ of error would lie.

The petition for re-hearing cannot be considered by this court, because it was not presented within the same term in which the cause was decided, nor within any time allowed by the court for that purpose, no such extension having been asked for or allowed. (24th Rule Supreme Court, 1 Fla., 197.) Nor is this a proper ground for praying a re-

hearing. A re-hearing cannot be asked for except upon some ground presented to the court upon the argument. Rule 24.

No question was raised by either party as to the sufficiency of the judgment, or the regularity of the writ of error. Both parties assumed upon the argument that the cause was regularly before the court, and it was submitted for decision upon questions presented and argued by counsel. Immediately on hearing the decision of the court, the counsel for the losing party caused the petition for a re-hearing to be filed. This paper will be allowed to remain on file, and the parties must take such steps as may be appropriate, if it shall be found that the matter suggested in the petition is true.