T. A. Winfield, J. Havenstreet and H. H. Elliott, Co-Partners Under the Firm Name of Winfield Packing Company, *Plaintiffs in Error,* v. J. G. Truitt, *Defendant in Error.*

Opinion filed January 22, 1916.

Rehearing denied February 15, 1916.

1.  A demurrer to a declaration as a whole is properly overruled where the declaration contains common counts.

2.  Where several persons are sued as copartners under a certain name and to the declaration they interpose a plea that they are not copartners but stockholders in a corporation of that name which had been duly organized under the laws of the State, and that it had changed its name from time to time under authority of law and that when the cause of action accrued the name of the corporation was not that under which the parties were sued; and it appears from the record in the form of a stipulation between the parties, that after the corporation was organized and letters patent issued and a certified copy of the charter filed and recorded in the office of the Clerk of the Circuit Court for the county in which the corporation was to have its principal place of business, but that the treasurer of the corporation had failed to file in the office of the Secretary of State and the office of the Clerk of the Circuit Court of the county in which the corporation was to have its principal place of business, duplicate affidavits that ten per cent of the capital stock of the corporation had been subscribed and paid, and from the evidence it appeared that when the suit was instituted the corporation bore the name under which the stockholders were sued as partners: HELD: That the plea was not sustained and that the persons sued were liable as members of a general partnership, under Section 2652 of the General Statutes of Florida.

3. The provision of Section 2652 of the General Statutes of Florida requiring a corporation organized in this State, through its treasurer to make and file in the offices designated therein, duplicate affidavits that ten per cent of the capital stock has been subscribed and paid, is neither remedial nor penal, but requires the act as showing good faith in the organization of the corporation and that the incorporators intend to do business under the charter and not as individuals. A failure to file the affidavits does not create a liability against the incorporators and stockholders for the debts incurred in the name of the corporation, but such liability having attached to them as individuals it continues as such against them until liquidated or settled.

4. Where persons have incurred such liability it is unnecessary in a declaration upon such cause of action, to allege that they organized a corporation but failed to comply with the statutory requirement as to the recording of the charter or the filing of the duplicate affidavits.

5. Where an immaterial issue is presented, but it appears from the record that the jury passed upon the merits of the case and a right judgment was entered a new trial should not be ordered because the immaterial issue should have been found in favor of the party complaining.

6. Whether incorporators and stockholders of a corporation which has failed to comply with the provisions of Section 2652 G. S. are liable for obligations arising *ex delicto* incurred in the corporate name, not determined in this case.

7. The trial court commits no error in refusing charges although they announce correct principles and are applicable to the evidence, if such charges have been already given by the court in substance and are embraced in the general instructions.

8. Requested instructions inapplicable to the evidence are correctly refused.

9.  An instruction which unqualifiedly imposes the duty upon a consignee of fruit under contract of purchase, to accept the same upon arrival at destination and sell the same for the best price obtainable notwithstanding the delayed shipment and bad condition of the fruit on arrival, is correctly refused where the evidence is conflicting as to the breach of contract on the part of the shipper, who was the seller, to whose breach of contract is attributable the delay in the transportation of the fruit and its bad condition on arrival.

10. Charges given by the court will be considered in connection with the evidence and pleadings in the case and interpreted in reference thereto, in testing assignments of error based on the giving of such instructions.

11. Where assignments of error are based upon a portion of the court's instructions, the appellate court in considering the assignments will examine the entire charge for the correct interpretation of the portion objected to and if in the light of the entire charge the portions objected to are not harmful or erroneous the assignments will fail.

12. The evidence examined and found sufficient to support the verdict.

Writ of error to Circuit Court, Dade County; H. Pierre Branning, Judge.

Judgment affirmed.

*Atkinson & Burdine* and *J. C. Gramling,* for Plaintiffs in Error;

*L. R. Railey,* for Defendant in Error.

ELLIS, J.—J. G. Truitt brought suit against T. A. Winfield, J. Havenstreet and H. H. Elliott as Co-part-

ners doing business under the firm name of "Winfield Packing Co." The declaration contained two special counts and several common law counts. The first count rests upon a cause arising *ex delicto,* and the second upon one arising *ex contractu.* The first count states an action upon the case for fraud, and the second for breach of contract. The first count alleges in substance that the defendants obtained from the plaintiff a large sum of money by falsely representing to the plaintiff that they had shipped to the plaintiff at Galveston, Texas, on the 21st day of December, 1912, several hundred crates of oranges from Miami, Florida, and telegraphing that statement to the plaintiff at Galveston, made a draft on him through a bank at that place for the price of the oranges; that the plaintiff relying on the representation made to him by the defendants as to the shipment, paid the draft; that the oranges were not shipped on the 21st day of December, but were not shipped until the 27th day of that month; that instead of shipping the oranges on the 21st day of December, the defendants delivered the fruit to the Van Steamship Co. and received a bill of lading therefor, with knowledge that it would not be shipped for several days, but would be stored in a fish house over the Miami River, which house was used by the Van Steamship Co. for storing freight; that the fruit arrived in Galveston in bad shape and unmarketable on account of the storing in the warehouse and delay in shipment.

The second count set out a contract to the effect that the plaintiff bought from the defendants a quantity of oranges in December, 1912, with the understanding that the fruit would be shipped immediately and in good condition and marketable at the time of shipment; that the

shipment was to have been made to the plaintiff at Galveston, Texas, immediately, and upon assurances of speedy transportation; that the defendants carried the fruit on the 21st day of December, 1912, to the Van Steamship Co. and left it there for shipment, although they were advised and informed by the Van Steamship Co. that the steamer on which the fruit should have been shipped had left port, and that it would be several days before another steamer would sail from Miami to Key West, at which point the fruit was to have been delivered to the Mallory Line for Galveston; that notwithstanding this information the defendants insisted on leaving the freight with the Van Steamship Co. and demanded a bill of lading for same dated December 21st, 1912; that on the same day the defendants wired the plaintiff. and wrote him that the fruit had been shipped, and drew on the plaintiff through a bank at Galveston, Texas, for the price of the fruit, and the plaintiff paid the draft; that the goods arrived in Galveston in bad condition owing to the fact that it had been stored in Miami for about a week prior to its shipment, and was in bad condition when it was delivered to the Van Steamship Company at Miami; that the defendants failed to comply with the terms of their contract with the plaintiff by "shipping inferior fruit, and by shipping same at a time and in a manner that the defendants knew would cause delay and would likely impair the market value of said fruit."

The third, fourth, fifth and sixth counts of the declaration are common law counts for money had and received by the defendants for the use of the plaintiff; for work done and materials furnished by the plaintiff for the defendants at their request; for money lent by the

plaintiff to the defendants, and for money paid by the plaintiff for the defendants at their request.

The defendants demurred to the declaration, which demurrer was overruled, and such ruling is assigned as the first error. The ruling of the court was correct, because the demurrer going to the declaration as a whole, and the common counts stating a cause of action, the demurrer should have been overruled. McDougald v. Bass, 53 Fla. 142, 43 South. Rep. 778; George v. Drawdy, 56 Fla. 303, 47 South. Rep. 939; Gulf Lumber Co. v. Walsh, 49 Fla. 175, 38 South. Rep. 831; La Floridienne, J. Buttgenbach & Co., Societe Anonyme v. Atlantic Coast Line R. Co., 63 Fla. 208, 58 South. Rep. 185.

The defendants filed the following pleas:

"1.    That these defendants are not now, nor were they at the time that the alleged cause of action accrued, co-partners trading under the name of Winfield Packing Company, nor co-partners trading under any other name, but these defendants say that at the time the alleged cause of action accrued, they were stockholders in a certain corporation, created, organized and existing under the laws of Florida, under the name and style of 'Winfield & Elliott Packing Company,' and that afterwards, during the month of January, A. D. 1913, by authority first obtained, the name of the corporation was changed to the name of 'Winfield Packing Company,' all of which is of record in the public records of Dade County, Florida; and these defendants say that the said Winfield Packing Company had its principal place of business in the City of Miami, Dade County, Florida, and that afterwards the corporation's name was changed from Winfield Packing Co. to the name of 'Cole-Winfield Fruit & Packing Company,' which corporation has its

principal place of business at Miami, Dade County, Florida.

"2nd.    For first additional plea to the first and second counts of the declaration, defendants say that they are not guilty.

"3rd.    And for a second additional plea to the first and second counts of declaration, defendants say that they sold to the plaintiff the said oranges at the price stated in the declaration, but that the said price was f. o. b. Crosland Steamship Company, or sometime known as the 'Van Steamship Company,' Miami, Florida, and it was understood and agreed between plaintiff and defendants that upon defendants delivering the oranges to J. G. Crosland or to the Van Steamship Company of Miami, Florida, that defendants' liability would cease and the same would constitute a delivery, and defendants say that on the 21st day of December, 1912, in compliance with an agreement and understanding between the parties that they did deliver to the said J. G. Crosland, or to the Van Steamship Company, the said fruit in a good and marketable condition and received bill of lading therefor; wherefore, defendants say upon said delivery their liability ceased.

"4th.    And for a fourth additional plea to said first two counts of the declaration, defendants say that it is true that they sold the fruit alleged in the declaration to the plaintiff upon the price stated, but that it was understood and agreed between defendants and plaintiff that upon defendants' delivering the fruit to the Steamship Company and upon defendants' procuring a bill of lading for the same, defendants' liability would cease and that the plaintiff would then honor a draft for the said amount, and defendants say that upon the said 21st day

of December, 1912, they did deliver to the said Steamship Company the said oranges in question, and did receive the bill of lading therefor, and that under and by virtue of the agreement with the plaintiff, they did draw for the amount and the plaintiff honored the draft, and defendants say that the said oranges when delivered to the Steamship Company were in a good and marketable condition and that by reason of said delivery, their liability ceased and they are not responsible in any wise for the said oranges after said delivery.

"5th.   And for a fourth additional plea to the first two counts of the declaration, defendants say that they never promised as alleged.

"6th.   And for a first additional plea to all counts of the declaration except the first two counts, defendants say that they never were indebted as alleged."

The plaintiff joined issue upon the defendants' pleas and the parties went to trial, which resulted in a verdict for the plaintiff in the sum of $523.26.   A judgment was entered for the plaintiff, and the defendants took a writ of error.

At the trial it was stipulated between the parties that the fruit in question was delivered to the Steamship Company in Miami, Florida, on December 21st, 1912, and that a bill of lading was issued therefor and delivered to defendants.   The parties also entered into another stipulation which was as follows:

"1.   That the defendants, under the name of Winfield & Elliott Packing Company applied to the Governor of the State of Florida for letters patent under the Articles of Incorporation filed at said time; that on September 10, 1912, letters patent were issued to the defendants under said name, and that said letters patent,

together with certified copy of Charter, or Articles of Incorporation issued therewith, were filed in the office of the Clerk of the Circuit Court in and for Dade County, Florida; that on the 22nd day of January, A. D. 1913, said Charter, or Articles of Incorporation, was amended by changing the name to the Winfield Packing Company, and that later, to-wit: September 10, 1914, said Charter or Articles of Incorporation were further amended by changing the name to the Cole-Winfield & Packing Company; that no affidavit of the Treasurer of said Company, under either of above mentioned names, that ten per cent of the capital stock of said company has been subscribed and paid in has been filed in the office of the Secretary of State of the State of Florida, or in the office of the Clerk of the Circuit Court in and for Dade County, Florida, but that the said defendants complied with all the laws of the State of Florida relating to corporations except that they failed to file the affidavit that 10 per cent of the capital stock has been subscribed and paid in, but that in other respects they fully complied with the laws relative to corporations; that at the time plaintiff's cause of action accrued the defendants were associated together in business under the letters patent and Charter issued by the Governor of the State of Florida, referred to above.

"2. That the letters, telegrams and copies of letters and telegrams, and other papers hereto attached, can be introduced in evidence.

"3. That the only business relations existing between the defendants as business associates was under the letters patent and Charter above referred to."

When the plaintiff finished the introduction of evi-

dence the defendants entered a demurrer to the evidence, which was overruled.

It is contended by counsel for plaintiffs in error that there is a variance between the allegations of the declaration and the proof in that the defendants are sued as co-partners, while the evidence shows them to be incorporators of a corporation known as the Winfield Elliott Packing Company, which after the cause of action accrued changed its name to Winfield Packing Company; that the failure of the corporation through its treasurer to file the affidavit required by the statute that ten per cent of the capital stock has been subscribed and paid does not destroy the corporate existence, but only renders the stockholders liable as members of a general partnrship for the debts of the corporation which do not include liabilities growing out of the torts committed by the corporation, and that the evidence shows that the defendants were entitled to a verdict.

Section 2652 of the General Statutes has been several times before this court for construction. See Heinberg Bros. v. Thompson, 47 Fla. 163, 37 South. Rep. 71; McNeill v. Wood, 66 Fla. 363, 63 South. Rep. 719. In the Heinberg case the court said: "The filing of the letters patent gives public notice of the powers, privileges and limitations of the corporation, and of the acceptance of the charter." The filing of the affidavits gives public notice that a certain percentage of the capital stock has been subscribed and paid showing that the corporation has been actually organized in good faith, and that the corporators intend to do business under the charter, and not as individuals, and that there has been no abandonment of the enterprise as a corporation. It shows also that there has come into the hands of the

treasurer a sum of money which constitutes an asset to which creditors may look for payment, and that the balance of the capital stock is a potential thing of value to creditors." Now the statute forbids a corporation to transact any business until the conditions named therein are complied with, and although the failure to comply with the conditions, which are precedent to the corporation's lawful right to transact any business, does not destroy the corporate existence, the liability of the incorporators and stockholders is that of a general partnership for all the corporation's debts.

The statute is neither remedial nor penal, but simply continues the contractual obligations of persons who, acting through their agents, the officers of a corporation not yet authorized to transact business, were liable on their contracts as if they had not intended to do business under the Charter. See Flash, Lewis & Co. v. Conn, 16 Fla. 428, 26 Amer. Rep. 721.

In a case like the one at bar the stockholders of the corporation are considered as parties to the original debt or contract, their liability attaches immediately upon the consummation of the contract with the corporation. The provision in the statute holding the incorporators and stockholders to liability as members of a general partnership under certain conditions, is a limitation or qualification imposed by the legislature upon the stockholders' exemption from individual liability. So by the terms of the statute, the corporation's debt under the circumstances becomes the debt of the stockholders as co-partners from the instant it is incurred. The contract is made by the parties in the light of the statute. They are liable in an original and primary sense; their liability is not created by the statute. The case is quite different

where such liability is imposed by way of a penalty for failure of the officers of the corporation to comply with some statutory requirement. In the latter case the liability is in the nature of a penalty; it did not result from the contract made by the corporation, nor from the mere fact of being a stockholder. See Derrickson v. Smith, 27 N. J. L. 166.

The effect of the statute forbidding the corporation from transacting any business until the requirements therein mentioned are complied with is to continue the liability of the incorporators and stockholders as a voluntary association of individuals in the nature of a copartnership. Jones v. Aspen Hardware Co., 21 Colo. 263, 40 Pac. Rep. 457, 29 L. R. A. 143; Garnett v. Richardson, 35 Ark. 144; Abbott v. Omaha Smelting & Refining Co., 4 Neb. 416; Richardson v. Pitts, 71 Mo. 128; Ferris v. Thaw, 72 Mo. 446; Medill v. Collier, 16 Ohio St. 599.

This provision of the law first appears in the Revised Statutes of 1892, up to which time the authorities were widely variant on the question of the partnership liability of the incorporators and stockholders of a corporation which had been defectively organized or had failed to comply with some condition precedent to the transaction of business. The cases above cited and others following the same reasoning held that the failure to comply with the provisions of the statute of incorporation left the incorporators liable as partners, while many other courts held to the contrary view, that the stockholders acting under the supposition that they were incorporated and were assuming only the liability of stockholders and not that of partners they would not be held liable as such. 17 Am. & Eng. Ency. Law, 866. But our statute has

settled the question in this State and along the line of reasoning in the cases above cited; that the liability originally existed, was primarily incurred, and was not created, but continued by the statute. This being true, it is not necessary to allege in the declaration that the defendands attempted to organize, and did organize, a corporation but failed to comply with the provisions of the statute requiring the treasurer to make and file an affidavit in the Clerk's office that ten per cent of the capital stock was subscribed and paid, or that the Charter had not been recorded, etc. Corporate existence was a matter of defense to have been pleaded by the defendants against the effort to hold them liable as partners, and as the filing of the affidavit was a condition precedent to the transaction of business, the plea should have contained such an averment if consistent with the truth.

The plaintiff joined issue on the pleas, it is true, but in view of the stipulation entered into by the parties, a right judgment was entered so far as this point is concerned. To award a new trial under such circumstances would be to run contrary to the letter and spirit of Chapter 6223, Laws of 1911. See Simonton v. Gandolfo, 4 Fla. 209.

It is unnecessary to discuss the question of whether under Section 2652 of the General Statutes the liability of the incorporators and stockholders under the circumstances named for all the corporation debts, includes obligations arising *ex delicto*. The point is not presented. The demurrer was not directed to the particular count in which the cause of action rested upon an alleged tort, but was addressed to the entire declaration and was properly overruled because the second count was not bad, and the common counts were of course good.

The evidence as presented by the record has been carefully examined. We think it amply supports the verdict. The letters and telegrams exchanged between the parties, and which were attached to the stipulation and read in evidence show that while the price agreed upon between the parties for the fruit was "f. o. b. Crosland S. S. Co. Miami," good fruit was to have been delivered, and the shipment made with reference to connections to be made at Key West with a steamer leaving that port for Galveston. On December 16, 1912, defendants wired the plaintiff that they would get the shipment for "this week's boat." On December 21st, they wired plaintiff "Shipped four hundred thirty-three oranges and forty-nine boxes tangerines, Dr. Lykes today." Dr. Lykes was the name of the steamer of the "Crosland S. S. Co." That telegram was followed by a letter from the defendants to the plaintiff dated the same day, in which the following language was used: "We to-day shipped you by the Dr. Lykes to Key West 433 boxes of oranges and 49 boxes of tangerines. We had considerable difficulty in getting up this shipment of oranges for you, and hope they will prove satisfactory," etc. On the same day they drew on the plaintiff for $704.20, the price of the fruit. In their letters of January 4 and March 25, 1913, the defendants admit that when they delivered the fruit at the dock on the 21st of December, they were informed and knew that it could not be shipped by the "Dr. Lykes;" that the boat was on the ways undergoing repairs, and that Crosland's boat could not possibly get in in time to make the connection. Yet after the delivery of the freight by the defendants under these circumstances, they telegraphed and wrote the plaintiff that they had "ship-

ped" the fruit on that day by the "Dr. Lykes" to Key West.

It would be idle to contend that these representations were truthful and not misleading. The evident purpose of them was to show compliance with the terms of the contract on their part to be performed, to justify their act in drawing upon the plaintiff for the price of the fruit. The evidence is ample to justify the conclusion by the jury that the parties entered into a contract which required the defendants to ship the fruit from Miami in time to make the connection at Key West with the Sunday steamer leaving that port for Galveston, and that the fruit was to be delivered to the steamship company in Miami in good condition; that the defendants did not ship the fruit in time to make such connection, and knew when they delivered the fruit at the steamship company's docks at Miami that the connection would not be made and that the fruit was in bad condition when delivered. The evidence also shows that the defendants were incorporators of the corporation named the Winfield & Elliott Packing Company and afterwards changed to Winfield Packing Company, which latter name it bore when the suit was instituted. All this is shown by the stipulation.

The plaintiffs in error assign as the ninth error the court's refusal to give instruction numbered one as requested by the defendants. The record shows that this instruction was given by the court in its general charge in the exact language of defendants' requested instruction and the giving of it by the court was excepted to by the defendants' counsel. As to the second and third instructions requested by the defendants, which were based on the theory that the fruit was sold to plaintiff at a

price f. o. b. the docks at Miami and were delivered by the defendants to the steamship company designated by the plaintiff, in good condition, were substantially covered by the charge given by the court, and it is no error on the part of the trial judge to refuse to read charges already substantially given. This court has many times announced that rule. It seems that counsel would, when insisting upon an assignment resting upon the court's refusal to give certain instructions, point out with clearness and definiteness in what principle the charge requested and refused differs from those given. The fact that one charge differs from another in magnitude, or in some words, does not show that it differs in substance or principle.

Assignments numbered twelve and thirteen which rest upon requested instructions numbered four and five which were refused, cannot be maintained because the stipulation entered into between the parties showed beyond question the liability of the defendants as members of a general partnership.

The defendants requested the court to give the following instruction: "I charge you further that when the fruit was received at Galveston by Mr. Truitt, that it was his duty to accept the same, and in good faith sell it for the best prices possible, and if he refused to accept the same on account of bad condition, then in such event the plaintiff has not acted in good faith and he cannot recover and you should find for the defendants." This requested instruction was refused, which ruling was made the basis of the fourteenth assignment.

Whether the plaintiff was required to accept the fruit upon its arrival in Galveston depended upon circumstances. If the transportation company had by its negli-

gence caused delays in carrying the fruit, or in handling it, to its damage, but not total destruction, the consignee or shipper could not recover the total value of the fruit. The remedy would be damages growing out of a breach of the contract of carriage, he would not be justified in abandoning them and charging the carrier the full value. Such is the rule supported by the authorities cited in the brief of plaintiffs in error. But what duty, if any, did the plaintiff owe the defendants in that regard, if the defendants by fraud and deceit as alleged in the first count, obtained from the plaintiff the price of the fruit by representing that they had fully complied with the terms of the agreement, when in fact they had not? Or as alleged in the second count had breached their contract by delivering fruit in bad condition to the carrier and at a time when they knew it would miss the desired connection at Key West? The requested instruction was unqualified in its terms. The court was asked to tell the jury that it was the plaintiff's duty to accept the fruit when it arrived in Galveston, and in good faith sell it for the best price possible, etc. That was not the plaintiff's duty. If the defendants complied with their contract by delivering the fruit to the steamboat company's docks at Miami and had no other duty to perform thereunder, the plaintiff should not have recovered at all; but if the defendants breached the contract at Miami, the plaintiff was under no obligation to take the fruit. But in any event the defendants got the benefit of the steamboat company's action at Galveston in selling the fruit, the proceeds of which were applied to the payment of the freight, and the remainder turned over to the plaintiff, who credited it on the claim against the defendants.

The fifteenth assignment is abandoned.

It is insisted that certain other instructions which the court gave at the plaintiff's request were erroneous, and such instructions were made the basis of the sixteenth and seventeenth assignments.

These instructions which were numbered four and five were not misleading nor amenable to the criticisms made by attorneys for plaintiffs in error. Charges refer to and should be considered in connection with the evidence and pleadings. McDonald v. State, 55 Fla. 134, 46 South. Rep. 176.

The case for the plaintiff made by the pleadings and the evidence upon the *ex contractu* aspect of it was that the defendants agreed with the plaintiff that in consideration of a certain price to be paid by the plaintiff for fruit to be delivered at the docks of a steamboat company in Miami to be consigned to the plaintiff at Galveston, Texas, the defendants would deliver fruit in good condition to be shipped or forwarded immediately to Key West in order to make connection at that port with a steamer leaving for Galveston, Texas; that defendants failed to comply with their agreement in that they delivered fruit which was not in good condition at the time of delivery, and at the time of delivery knew that the fruit could not be carried by the steamship company at Miami to Key West for several days, and that the connection at that port would be missed in consequence of which the fruit would be long delayed in reaching its destination. Under the terms of the agreement the plaintiff owed the defendants nothing until they had deposited the fruit in good condition at the docks of the steamship company at Miami at a time when that company was in a position to carry it without delay to Key West to connect with a steamer leaving that port for Galveston. The defendants' duty

did not end until they had delivered to the steamship company at Miami the fruit at the time and in the condition contemplated by the contract. This the evidence tended to show the defendants failed to do, the jury believed the plaintiff's witnesses on this point, and the charges complained of bear reasonably no other construction.

Charges numbered twelve and thirteen constituting the nineteenth and twentieth assignments of error, although somewhat involved when considered alone, are not erroneous when considered in connection with the entire charge upon the subject dealt with in the two instructions. Knight v. State, 44 Fla. 94, 32 South. Rep. 110; Gracy v. Atlantic Coast Line R. Co., 53 Fla. 350, 42 South. Rep. 903; Georgia Southern & F. R. Co. v. Hamilton Lumber Co., 63 Fla. 150, 58 South. Rep. 838.

The remaining assignments of error have been considered in the opinion; they involve questions already discussed as to the liability of defendants as members of a general partnership. We find no reversible error in the record, so the judgment of the lower court is affirmed.

TAYLOR, C. J., and SHACKLEFORD and WHITFIELD, JJ., concur.

COCKRELL, J., absent by reason of sickness.