GULF, FLORIDA & ALABAMA RAILWAY COMPANY, *Plain- tiff in Error,* v. JAMES W. KING, *Defendant in Error.*

## Opinion Filed February 9, 1917.

1. Chapter 6521, Acts of 1913, defines and enlarges the liability of employers for injuries to employees engaged in the haz- ardous occupations therein stated, and the language of the statute should be given its proper meaning and effect.

2. The word "railroading" as used in Chapter 6521, Acts of 1913, is definite and comprehensive and includes "work upon a railroad" and "the business of constructing railroads."

3. The work of hoisting piles with a steam crane to be used in constructing a railroad wharf is a part of the construction of a railroad, and is a hazardous occupation within the provisions of Chapter 6521, Acts of 1913.

4. Under Section 3150 of the General Statutes of 1906, an em- ployee who is not "without fault or negligence" cannot recover for damages "caused by negligence of another em- ployee," while under Chapter 6521, an employee who is "injured in part through his own negligence and in part through the negligence of another employee," may recover damages from the employer unless both employees were fellow servants and they were "jointly engaged in performing the act causing the injury."

5. A fireman of a steam engine who has no part with the engineer in operating a steam crane attached to the engine and used in

hoisting logs, is not "jointly engaged in performing the act" of hoisting the logs so as to bar a recovery from the employer for injuries to the fireman caused by the negligence of the engineer in hoisting the logs by means of the steam crane.

Writ of Error to Court of Record for Escambia County; Kirke Monroe, Judge.

Judgment affirmed.

TAYLOR and ELLIS, JJ., dissent.

*Blount & Blount & Carter,* for Plaintiff in Error;

*C. M. Jones* and *John C. Avery,* for Defendant in Error.

WHITFIELD, J.—The declaration filed herein by King against the Railway Company, on which verdict and judgment were rendered, is as follows:

"The plaintiff, by his attorneys, sues the defendant for that, to-wit, on the 15th day of December, 1914, to-wit, in the County and State aforesaid, the said defendant, by means of certain machinery which it was then and there operating, was engaged in hoisting wooden piles out of the water alongside of defendant's wharf and depositing them upon the land; that the machinery so used consisted of an engine and boiler, cranes, booms, wire ropes, winches and levers, by means of which such piles were taken hold of as they lay in the water alongside the defendant's wharf and hoisted up therefrom and then swung by means of said appliances and machinery to and over a certain place where they were to be deposited; that the plaintiff was then and there an employee of the

defendant as fireman to fire the said engine by means whereof the said work was by the defendant accomplished, and was then and there actually engaged in the performance of such duty; that in hoisting by means of said machinery and appliances a certain wooden pile from the water and swinging it into place where it was to be deposited, the defendant then and there carelessly and negligently swung the said pile upon and against the right leg of the plaintiff, who was then and there in the exercise of due care upon his part, and the result was that his leg was jammed, crushed and lacerated, on account whereof he was compelled to, and did have the same treated by doctors and nurses for many days at a hospital at great expense, and plaintiff was, by reason of such injury subjected to and suffered great physical pain and mental distress; and the said plaintiff further avers that he has never wholly recovered from the injury so inflicted, but has been permanently injured in so much that he will never have the full use of his said leg, and will never be able to work in the same manner, or as efficiently as before such injury, and he has sustained other great and grievous injuries.

"To plaintiff's damage of Fifteen Thousand ($15,-000.00) Dollars, and therefore he sues."

Issue was joined on the following pleas:

"1. It denies that this defendant on the day mentioned in the declaration or at any other time was operating certain machinery consisting of the appliances mentioned in the declaration and engaged in hoisting wooden piles out of the water alongside the defendant's wharf and depositing them upon the land as alleged in said declaration.

"2. It denies that plaintiff was an employee of defendant as fireman or in any other capacity at the time

of the alleged injury to the plaintiff as alleged in said declaration.

"3.    It denies that the plaintiff was at the time of the alleged injury actually engaged in the performance of any duty to the defendant as its employee as alleged in the declaration.

"4.    It denies that at the time of plaintiff's alleged injury he was then and there in the exercise of due care on his part as alleged in said declaration."

·And for further plea to the first count the defendant says:

"1.    It denies that the defendant in hoisting by means of the machinery and appliances mentioned in the declaration a certain wooden pile from the water and swinging it in the place where it was to be deposited, carelessly and negligently swung said pile upon and against the plaintiff as alleged in the first count of the declaration."    Verdict and judgment for $1750.00 were rendered for the plaintiff and defendant took writ of error.

It appears that the plaintiff below was at the time of the injury engaged as fireman of an engine which was mounted on a railroad flat car and run upon railroad tracks to operate a crane attached to the engine.  When the injury occurred long wooden piles or logs were being lifted by the steam crane from the water alongside the defendant's wharf and placed on the land near the side of the flat car on which the engine and crane were mounted.    The plaintiff while standing on the running board attached to the side of the ·flat car on which the engine and crane were mounted, was injured by the end of a pile or log as it was being hoisted.    Liability of the defendant is predicated upon the alleged negligence of

the engineer in operating the steam crane to hoist the pile or log.

It also appears that the construction of the railroad on which the injury occurred was not yet complete and that the plaintiff and the engineer of the steam crane had at different times been employed in different occupations by a construction company in building the railroad and by the railroad company as their services were engaged by the one or the other. Among the contentions for the plaintiff in error it is argued that the evidence shows that both' the plaintiff and the engineer were employed by the construction company at the time of the injury. While there is positive evidence that would have warranted a finding by the jury that the plaintiff and the engineer were both employed by the construction company at the time of the injury, yet there is evidence on which a contrary finding may be predicated. The intimate relations and the course of conduct between the railroad company and the construction company and the circumstances of the employment constitute a legal basis for a finding by the jury that both the plaintiff and the engineer were employed by the defendant railroad company at the time of the injury.

It is contended for the plaintiff in error that Section 3150 of the General Statutes of 1906 is applicable to this case. Such section is as follows:

"If any person is injured by a railroad company by the running of the locomotives or cars, or other machinery of such company, he being at the time of such injury an employee of the company, and the damage was caused by negligence of another employee, and without fault or negligence on the part of the person injured, his employment by the company shall be no bar to a re-

covery.    No contract which restricts such liability shall be legal or binding."

Assuming from the evidence that the plaintiff, a fireman, was himself negligent in being on the running board of the flat car on which the engine and crane were operated instead of being at the fire box of the engine, where he would not have been injured, it is argued that as "the damage was caused by negligence of another employee," the engineer, and as the plaintiff was not "without fault or negligence" he cannot recover under the above quoted statute in view of the holdings in Florida Cent. & P. R. Co. v. Mooney, 40 Fla. 17, 24 South. Rep. 148; Atlantic Coast Line R. Co. v. Ryland, 50 Fla. 190, 40 South. Rep. 24; Ryland v. Atlantic Coast Line R. Co., 57 Fla. 143, 49 South. Rep. 745.

Chapter 6521, Acts of 1913, is as follows:

"AN ACT to Fix the Liability of Persons, Firms and Corporations Engaged in Certain Hazardous Occupations in This State for Injuries to and Death of Their Agents and Employees in Certain Cases, and Exempting Money Due or Likely to Become Due on Account of Liability Growing Out of This Act from Garnishment, Execution and Other Processes, and to Declare Illegal and Void Contracts, Contrivances and Devices Relieving or Exempting Such Persons, Firms and Corporations from the Liability Prescribed by this Act.

*"Be It Enacted by the Legislature of the State of Florida:*

"Section 1.    That this Act shall apply to persons, firms and corporations engaged in the following hazardous occupations in this State; namely, railroading, operating street railways, generating and selling electricity, telegraph and telephone business, express business, blast-

ing, and dynamiting, operating automobiles for public use, boating, when boat is propelled by steam, gas or electricity.

"Sec. 2: That the persons, firms and corporations mentioned in Section one of this Act shall be liable in damages for injuries inflicted upon their agents and employees, and for the death of the agents and employees caused by the negligence of such persons, firms, and corporations, their agents and servants, unless such persons, firms and corporations shall make it appear that they, their agents and servants have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against such persons, firms and corporations.

"Sec. 3. That the persons, firms and corporations mentioned in Section one of this Act shall not be liable in damages for injuries to their agents and employes, or for the death of such agents and employes, where same is done by their consent, or is caused by their own negligence. If the employes or agents injured or killed, and the persons, firms and corporations mentioned in Section one of this Act, or their agents and employes are both at fault, there may be recovery, but the damages shall be diminished or increased by the jury in proportion to the amount of default attributable to both, provided that damages shall not be recovered for injuries to an employe injured in part through his own negligence and in part through the negligence of another employe, when both of such employes are fellow servants, where the former and the latter are jointly engaged in performing the act causing the injury and the employer is guilty of no negligence contributing to such injury.

"Sec. 4. That the doctrine of assumption of risk shall not obtain in any case arising under the provisions of this Act, where the injury or death was attributable

to the negligence of the employer, his agents or servants.

"Sec. 5.    That the writ of garnishment, execution of other processes shall not issue out of any court to reach any money due or likely to become due as damages under the provisions of this Act.

"Sec. 6.    That any contract, contrivance or device whatever, having the effect to relieve or exempt the persons, firms and corporations mentioned in Section one of this Act, from the liability prescribed by this Act, shall be illegal and void.

"Sec. 7.    This Act shall take effect upon its becoming a law.

"Approved June 7, 1913."

This statute was intended to define the liability of employers for injuries to employees engaged in the hazardous occupations therein stated.    Among these occupations is that of "railroading."    While Chapter 6521, Acts of 1913, relates only to injuries to employees, yet in so far as it conflicts with Sections 3148, 3149 and 3150, the former supersedes the latter and Chapter 6521 should be applied in cases covered by it.

The Century Dictionary defines "railroading" to mean "The management of or work upon a railroad or railroads; the business of constructing or operating railroads (U. S.)."    Webster's International Dictionary of the English Language (1916) defines "railroading" to mean "The construction of, or work upon, a railroad.    Colloq. U. S."

The manifest intent of Chapter 6521, Acts of 1913, is to extend and broaden the liability of employers for injuries to employes engaged in certain hazardous occupations.    This enlargement applies to employees of railroad companies that prior thereto were covered by Sections 3148, 3149 and 3150 of the General Statutes of 1906,

which Sections were originally enacted in 1891. The Act of 1891, Sections 3148, 3149 and 3150, General Statutes of 1906, was confined to "damage done * * * by the running of the locomotives, or cars or other machinery of" "a railroad company." Chapter 6521 applies to "damages for injuries inflicted upon * * * agents and employees," "caused by the negligence of * * * persons, firms and corporations, their agents and servants." And the terms of the latter Act, read in the light of organic limitations, impose a liability for "injuries inflicted" upon an employee by the negligence of the employer or his servant or agents while the employee is engaged in the "hazardous occupations" named in the statute. The mere fact that the statute does not cover all hazardous occupations does not deny the equal protection of the laws, where there is no palpably arbitrary and oppressive discrimination in the classification and regulations made by the statute.

As the Act of 1913 was designed to extend and not to curtail the liability of employers to employees engaged in hazardous occupations, the language used should be given its proper meaning and effect. The terms "engaged in" "railroading" by "persons, firms and corporations" are quite as definite as, and are much more comprehensive in their scope, meaning and operation than the restricted terms "the running of the locomotives, or cars or other machinery of" "a railroad company."

The word "railroading" was, when used in the statute, defined by standard authorities to mean "work upon a railroad," and "the business of constructing railroads."

The work of hoisting piles with a steam crane to be used in constructing a railroad wharf is a part of the construction of a railroad; and it is manifestly a "hazardous occupation." In these circumstances, the terms of

the Act of 1913 clearly apply to the employer's liability to its employees in this class of cases.

The obvious purpose of Chapter 6521, Acts of 1913, is to extend the liability of employers for injuries received by employees while engaged in the stated hazardous occupations, to modify the effect of contributory negligence and to abolish the doctrine of assumed risk in cases covered by the Act.

Under Section 3150 of the General Statutes of 1906, an employee who is not "without fault or negligence" cannot recover for damages "caused by negligence of another employee," while under Chapter 6521, an employee who is "injured in part through his own negligence and in part through the negligence of another employee," may recover damages from the employer unless both employees were fellow servants and they were "jointly engaged in performing the act causing the injury."

If it be rightly assumed from the evidence and from the amount of the verdict that there was some appreciable contributory negligence on the part of the plaintiff, and even though the engineer of the defendant, whose negligence is stated to have been the proximate cause of the plaintiff's injury, and the plaintiff, were fellow servants of the defendant, they were not "jointly engaged in performing the act causing the injury," therefore recovery by the plaintiff is permitted by the present statute, even though the employer was guilty of no negligence contributing to the injury. In "performing the act" of hoisting the pile or log, which caused the injury, the plaintiff was not "jointly engaged" with the engineer. The plaintiff was fireman for the engine, he had no part in the operation of the crane or in the movement and placing of the piles or logs.

There is substantial evidence upon which the jury could under the statute 'legally have found negligence of the defendant as alleged, and there is nothing to indicate that the jury were not governed by the evidence.

No prejudicial or reversible errors appear and the judgment is affirmed.

BROWNE, C. J., and SHACKLEFORD, J., concur.

ELLIS, J., dissenting.

I think that Chapter 6521, Laws of 1913, extends the liability of persons engaged in certain hazardous occupations, for injuries received by their employees, but it was not intended by that act to abolish the fellow servant doctrine. That doctrine has its basis in public policy, it rests upon the theory that servants engaged in a common or general employment should be watchful of each other to the end that carefulness in the performance of their duties may be promoted. The safety and welfare of the public is in a large measure secured by this rule, especially in this progressive age where steam, electricity and other means for developing the greater power necessary to carry on the commerce of the day are utilized to operate the powerful machinery used.

The disastrous consequences to human life and to property which may at any time result from the careless operation of machinery, particularly in places to which the people have been drawn by their business interests, is too often manifested; the numerous "accidents" occurring in the operation of railroads and street car lines alone show to what a very great extent the public must depend upon the efficiency, skill and carefulness of the men engaged in the actual handling of the machinery. It

is important, therefore, that every means available, every reasonable precaution within the range of legislative activity should be taken to secure on the part of men engaged in such occupations that degree of skill, efficiency and carefulness that will reduce injury to life and property from the operation of such machinery to a minimum. The experience of many generations has proven that the fellow servant doctrine makes for the accomplishment of that act.

The legislature, however, by the Act referred to has seen fit to narrow that doctrine and reduce its scope from the common employment in which the employee may be engaged to the "act causing the injury;" holding the employer liable in all cases of injury to employees caused by the negligence of a fellow servant except where the injured employee is "jointly engaged" with his negligent fellow servant in "performing the act causing the injury" and is himself guilty of negligence.

The construction which the majority opinion places upon the words "act causing the injury" which appear in the statute, to all practicable purposes fritters away the substance of that salutary doctrine to a mere shadow. It practically removes from employees, even where they are engaged together in the particular work, all motive for co-operation, watchfulness of each other's movements and regard for each other's skill, efficiency and care. It practically relieves an employee from exercising that watchfulness over his co-employee's work which experience has taught is so necessary to protect the lives of the innocent from carelessness and inefficiency in the operation of powerful machinery.

The word "act" in the phrase "act causing the injury" should not be given that interpretation which narrows it to the particular negligent act resulting in injury,

but should be taken to mean the act in which the employees were jointly engaged. As in the case at bar, the act in which the fireman and engineer were "jointly engaged" was the operation of a steam derrick.

In the operation of a railroad locomotive the engineer and fireman are jointly engaged, and if injury to the fireman results from the negligent handling of the machinery of the locomotive the only question in a suit by him for damages against his employer, would be whether he was negligent also. If he was also negligent, he would nevertheless be permitted to recover under the rule announced in the majority opinion, although the lives of the passengers on the train were in a large measure entrusted to his carefulness and prudence as well as that of the engineer.

The act should be construed in the interest of the people, so as to promote their safety and guard them as much as possible from the carelessness and inefficiency of men employed in hazardous occupations, and not so as to place a premium upon inattention and negligence on the part of those so employed which may result in injury to others.

TAYLOR, J., dissenting.

I agree with Mr. Justice ELLIS in his dissenting opinion, but go further in my construction of the words in the Act: "jointly engaged in performing the act causing the injury." My view is that the fellow servants included in the quoted words are all co-employees who are there present doing anything or part of anything that contributes to the bringing about or production of the immediate act that causes the injury.

Illustration: In this case we had the fireman (the

plaintiff) producing the steam or motive power by which the log that hurt him was moved at all, the engineer who manipulated the steam engine and ropes and tackle that hoisted the logs from the water, and another employee or two in boats adjusting the hooks into the logs by which they were hoisted. In the absence of the particular work that each of them did there could not have been a like accident. My view is that all of these employees were within the words of the statutes "fellow-servants who were conjointly engaged in the performance of the act that caused the injury."