CHARLOTTE HARBOR & NORTHERN RAILWAY COMPANY, A
CORPORATION, *Plaintiff in Error*, v. FLORENCE
TRUETTE, *Defendant in Error*.

### Opinion Filed February 11, 1921.

1. Where one assignment of error groups the court's ruling
   upon the validity of more than one plea, the assignment
   will fail unless the ruling was erroneous as to all pleas so
   passed upon by the court.

2. In a cause in which damages are sought against a railroad
   company for personal injuries under Chapter 6521, Acts of
   Florida, 1913, the doctrine of assumption of risk does not
   obtain where the injury is attributable to the negligence
   of the employer, his agents or servants.

3. In the trial of a cause during the taking of evidence be-
   fore a jury, if evidence is permitted which is irrelevant
   but nevertheless operates to give an unfair advantage to
   one of the parties over the other, placing the latter in an
   unfavorable light and embarrassing his defense, a mis-
   carriage of justice may reasonably be said to have oc-
   curred.

4. In determining whether charges to the jury contain er-
   roneous propositions rendering them harmful error, the
   charges should be considered as a whole in so far as they
   bear upon a particular proposition assailed.

5. In an action for damages for personal injuries alleged
   to have resulted from the negligent act of a railroad cor-
   poration through its employees, the recovery can be had
   only upon the case made by the declaration.

6. Charges of the court to the jury should be confined to the
   issues made by the pleadings and applicable to the evi-
   dence.

7.  In giving and refusing requested instructions it is unnecessary for the trial court to do more than merely give or refuse the instruction.  To undertake to give a reason for giving the instruction or refusing it, such as that it expresses the law or does not, or that it is appropriate or applicable or not as the case may be, may under some conditions operate to unjustly embarrass one of the parties

8   In an action brought against a railroad corporation under Chapter 6521, Laws of 1913, for damages for personal injuries to a railroad employee while in the discharge of his duty, the burden is upon the plaintiff to prove the injury and the negligent act causing it.

9.  In a case in which damages are sought from a railroad corporation for alleged injuries to an employee resulting from the negligence of the corporation's agents or servants, where the facts disclose that the injured person was at the time of the injury engaged in interstate commerce, then the Federal law regulating the plaintiff's right is paramount and excluded all conflicting State regulations.

A Writ of Error to the Circuit Court for DeSoto County; John S. Edwards, Judge.

Judgment reversed.

*McKay & Withers* and *Treadwell & Treadwell,* for Plaintiff in Error;

*Leitner & Leitner,* for Defendant in Error.

ELLIS, J.—William H. Truette was employed by the plaintiff in error, hereinafter referred to as the defendant, in October, 1914, as a lineman to keep up the telephone system operated by the defendant in connection with its railroad business.  The defendant was a rail-

road corporation operating a line of road from Mulberry in Polk County to Boca Grande in Lee County, both within this State. A large part of the defendant's business, both freight and passenger, was interstate. One witness said that about seventy-five per cent. of the business was of that character. On the 9th of October, 1914, Truette, who during the day had been at work somewhere between Arcadia and Mulberry, received instructions to go to Boca Grande and repair some telephones which, according to the plaintiff, had been damaged by a storm the night before. Truette left Arcadia about five o'clock in the afternoon. He used for his transportation a railroad motor car, about eight-horse power, driven by gasoline. Four persons constituted the party: Mr. Truette, who was going to repair the telephones; Mr. McAmos, master mechanic, who went to inspect and "fix up" an engine belonging to the company at Boca Grande; Ike Peterson, a negro, who went with Mr. McAmos to come back on the engine which was out of commission, and Mr. J. L. Williams, the motorman who drove the car. In traveling over the line of road upon business of the company, Mr. Truette was furnished with transportation by the company, either upon its trains or upon motor cars. The evidence is not clear as to who had charge of the motor car that night. Mr. Williams said some one in authority ordered him out, Mr. McAmos could have done so. Peterson said in the direct examination that he did not know who gave the orders for the car to go; in the same examination he said Mr. McAmos said "Let's go." Mr. McAmos said that he did not order the car out, but asked permission from Mr. Truette to go with him, but Mr. Truette had to get permission from Mr. Judge, the road master, to use the car. Mr. Truette and Mr. McAmos sat upon the front end of the seat which ran

longitudinally through the center of the car, the motor-man, Mr. Williams, was in the center, and the negro was behind. There was no light upon the car, nor was there a railing in front. After traveling south from Arcadia toward Boca Grande about one hour and ten minutes, during which time they had traveled about thirty miles and were within a mile of Myakka River, a cow attempted to cross the railroad track from the left side. The car struck the cow, throwing it to the right, killing it. Mr. Truette was thrown forward upon the track, the car passing over him, inflicting injuries from which he died within a few hours. The car was within fifteen or twenty feet of the cow before Mr. Williams saw it. Mr. McAmos saw the cow when the car was within twenty-five or thirty feet of it. The rear wheels of the car left the track and the car was stopped about twenty-five or thirty feet from the point of collision. At the time of the accident the car was traveling about twelve or fifteen miles per hour.

Mrs. Florence Truette, the widow of William H. Truette, brought an action against the defendant for damages for the wrongful death of her husband. The amended declaration was filed in October, 1915. Mrs. Truette married again in May, 1916. Her name at the time of the trial was Mrs. Dorner.

The defendant pleaded not guilty. The second plea set up that deceased knew that cattle trespassed upon the right of way and tracks of the railroad company and thereby caused risks of collision between them and cars moving thereon; that the collision alleged in the declaration to have occurred was due to unavoidable accident and not to any negligence of the defendant or its employees in the operation of the car, and that deceased as-

sumed the risk of injury incident to riding upon the car under the circumstances. The third plea averred the same facts as to cattle straying upon the railroad tracks, and the deceased's knowledge of the circumstances, and averred that he voluntarily rode upon the car, was, therefore, not free from fault, and if he was injured through negligence of any one, it was the negligence of a fellow servant. A demurrer to the second and third pleas was sustained, and the ruling is made the basis of the first assignment of error.

This assignment groups the court's ruling upon the validity of the two pleas, therefore unless the ruling was erroneous as to both pleas the assignment must fail. See Green v. Sansom, 41 Fla. 94, 25 South. Rep. 332; Daniel & Finley v. Siegel-Cooper Co., 54 Fla. 265, 44 South. Rep. 949; Cooney-Eckstein Co. v. King, 69 Fla. 246, 67 South. Rep. 918; Eaton v. Hopkins, 71 Fla. 615, 71 South. Rep. 922.

The declaration alleges that the deceased was employed by the defendant as *lineman* to keep up its telephone system used in connection with its road, and it was the defendant's duty under its contract with deceased to "carry" him from place to place over its road upon trains, cars, etc., while he was repairing and keeping up its "said line of telephone." That the deceased was on duty at Arcadia and was *notified* by defendant to come to Boca Grande as "soon as possible" and "defendant would provide one of its said motor cars to carry" him to that place.

It is alleged that the motor car was provided by defendant, that it was under the management of its employees, that deceased had no control over it, and that it was dangerous to persons riding thereon when carelessly

operated; that the trip was made in the night time, that there was no light upon the car and it was driven at a reckless speed. The second count omits allegations as to there being no lights on the car and as to the collision occurring at night. Both counts allege that at the time of the injury the deceased was the employee of the defendant and *was on duty*. The second plea avers assumption of risk by the deceased. The third plea avers that the injury resulted from the negligence of a fellow servant and that the deceased was not free from fault in that he knew the dangers incident to the method of transportation under the circumstances, yet voluntarily incurred such dangers. The allegations of the declaration preclude the idea that the motorman in charge of the car and the deceased were jointly engaged in performing the act causing the injury. See Gulf, F. & A. R. Co. v. King, 73 Fla. 325, 74 South. Rep. 475.

In the case of Atlantic Coast Line R. Co. v. Holliday, 73 Fla. 269, 74 South. Rep. 479, this court held that in no case arising under the provisions of Chapter 6521, Acts of 1913, does the doctrine of assumption of risk obtain where the injury is attributable to the negligence of the employer, his agents or servants. See 2 Rev. Gen. Stats. of Florida, 1920, Sec. 4974.

Counsel for defendant argue that as there is no allegation in the declaration or averment in the plea that the deceased was required to use the motor car at night, his use of it involved an assumption of risk which would be permissible under Chapter 6521, *supra*. This contention cannot be maintained because the declaration does allege that the deceased was an employee of the company on *duty* at the time of the accident and that the car was driven at a dangerous and reckless speed. If the deceased

was under no obligation by contract to make the trip to Boca Grande at night upon a motor car without lights, but agreed to do so upon defendant's request, he would nevertheless occupy the same relation to the defendant as if it had been his duty under the contract to go. Being thus an employee and not engaged jointly with another in performing the act (operating the car), causing the injury the plea of assumption of risk does not obtain. It is unnecessary to discuss the third plea. The assignment of error must fail.

J. L. Williams, a witness for the plaintiff, testified that there was no railing on the car. He was asked upon re-direct examination if the company, defendant, did not fix up the car after the ''occurrence.'' This question was objected to by defendant, and exception taken to the overruling of the objection by the court. The witness answered that he thought "they put a rail on the front end" of the car. The defendant moved to strike that portion of the testimony, which motion was denied. These two rulings constitute the bases of the second and third assignments of error. No issue was presented by the pleadings upon the defective condition of the car, if the absence of a rail across the front end was a defective condition. The relevancy of the testimony is not apparent, and it might have had the effect of embarrassing the defendant, placing it in an unfavorable light before the jury and otherwise unfairly impairing its defense. Whenever an unfair advantage is permitted to one party in a cause pending in a court of justice over the other, a miscarriage of justice may reasonably be said to have occurred. So it is doubtful if Chapter 6223, Laws of 1911, providing that no new trial shall be granted upon the ground of improper admission of evidence, unless after an examination of the entire case it shall appear that the

error has resulted in a miscarriage of justice, can be relied upon as a cure for all errors of "pleading or procedure" that may be committed in the progress of a cause. We do not hold the ruling to be revisible error, however, because upon cross examination the witness had been asked respecting the car if "everything" was in "good shape," and the reply was yes. The question upon re-direct examination to which objection was made was probably intended to elicit some explanation from the witness as to his testimony on cross-examination regarding the good condition of the car at the time of the accident, and although neither the question nor the information obtained related to the condition of the car at the time of the accident they were unobjectionable in so far as they tended to show the accuracy of the witness' opinion as to the car being in "good shape."

Assignments of error numbered from the sixth to the fifteenth, inclusive, rest upon instructions given by the court to the jury and remarks made by the judge in refusing certain instructions requested by the defendant, and in giving others requested by the plaintiff.

It would be of no service to discuss these charges seriatim besides it would involve copying into this opinion much matter unnecessary to an elucidation of the points discussed. It has been frequently held by this court that charges should be considered as a whole in determining their correctness. See Lane v. State, 44 Fla. 105, 32 South. Rep. 896; Ward v. State, 51 Fla. 133, 40 South. Rep. 177; Seaboard Air Line R. Co. v. Scarborough, 52 Fla. 425, 42 South. Rep. 706; Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, text 462, 43 South. Rep. 318.

If an instruction announces a patently erroneous proposition of law it must affirmatively and clearly appear

that the presumptive harm caused thereby was entirely removed when the charges are considered as whole. See Atlantic Coast Line R. Co. v. Crosby, supra; Cross v. Aby, 55 Fla. 311, 45 South. Rep. 820. The charges should also refer to and be considered in connection with the evidence and pleadings. See McDonald v. State, 55 Fla. 134, 46 South. Rep. 176; Winfield v. Truitt, 71 Fla. 38, 70 South. Rep. 775.

An essential element of the case as made by the declaration was the alleged fact that Mr. Truette had no control over the car. The burden rested upon the plaintiff to establish that fact, because if deceased did have control over the car the accident in so far as it was the result of negligence was one produced by himself and a co-employee or fellow-servant while jointly engaged in performing the act causing the injury. In which case both the defences of contributory negligence and assumption of risk were available to the defendant. The second plea was not full enough in its averments to raise the question of control over the car by the deceased. The declaration expressly alleged that he did not have control; the plea did not deny it. Therefore for the purposes of demurrer to the plea the allegation was admitted. But the plaintiff should recover upon the case made by her declaration. There was evidence sufficient to go to the jury upon the question of control of the car by deceased, but it was a disputed and by no means conceded point. Yet in one of the charges the court instructed the jury that the ''doctrine of assumption of risk did not obtain'' where the injury was attributable to the negligence of the employer or his servants, gave instructions in the language of statutes which were superseded by Chapter 6521 under which the action was brought and refused upon defendant's request to charge the jury upon that phase of

the case involving the deceased's participating in the act which caused the injury. The charge that assumption of risk did not obtain was equivalent to saying that the negligence in this case was attributable to the defendant or an employee other than Mr. Truette. The trial court applied to the proceedings in this case, Sections 3148, 3149 and 3150 of the General Statutes, 1906. The difference between these sections of the General Statutes and Chapter 6521, *supra*, were fully pointed out by this court in Atlantic Coast Line R. Co. v. Gardner, 77 Fla. 305, 81 South. Rep. 473. The charges were not applicable to the pleadings nor the evidence; they were ambiguous in the matter of defining the province of the jury in determining the weight and credibility of the evidence, and concerning their decision upon the evidence under the charge of the court. In the matter of stating the issues raised by the plea of not guilty, the sixth instruction was unclear. When declining to give certain instructions requested by the defendant the court announced to the jury that his reason for the refusal was that the requested instructions did not correctly state the law of the case. We do not say that such a statement alone is reversible error, but it is entirely possible for such unnecessary remarks to be carried so far in the trial of a closely contested case as to materially embarrass one party and make more difficult the prosecution or defense of his case. It may be carried to such an extent as to amount to a denial of an impartial trial, not to say an attempt to encroach upon the province of the jury and influence its decision upon the evidence. See Lester v. State, 37 Fla. 382, 20 South. Rep. 232.

The charge requested by the plaintiff and numbered one, given by the court, was erroneous and misleading in erroneously stating the issues and in the law applicable

to the case. The case was controlled by the provisions of Chapter 6521, *supra*. The declaration as has been pointed out was formed upon the theory that the above mentioned act was applicable. The court's ruling upon the demurrer to the pleas was based upon the law as contained in that statute. The plea of not guilty denied the wrong and injury. The allegations were that the injury occurred as the result of the negligence of an employee of the company in operating a motor car over which the deceased had no control. The defendant's pleas were not full enough in averments as to the relation of the deceased to the operation of the car. Its plea of assumption of risks therefore was improper. The instruction informed the jury in substance that proof by plaintiff of the injury alone was sufficient upon which to base recovery and the burden was upon defendant to prove that it was free from fault or that the deceased was guilty of negligence. The charges were seemingly framed upon a wrong conception of the case, and taken as a whole were misleading and constitute reversible error.

There are other questions presented that should be considered. The defendant contends that the evidence shows without contradiction that deceased was in charge of the car and had control over it, in that he could have directed the rate of speed at which it should be driven and could have caused lights to be placed on it if he desired, and that being true there should have been a directed verdict for the defendant upon authority of Atlantic Coast Line R. Co. v. Ryland, 50 Fla. 190, 40 South. Rep. 24. The case cited is authority for the position taken. Chapter 6521, *supra,* enacted about eight years after the decision in that case does not change the law as announced therein upon this point. There was enough

evidence, however, to go to the jury upon the averment that the deceased had no control over the car.

Several instructions requested by the defendant and refused, which refusals to so instruct the jury, form the bases of the twenty-first, twenty-second and twenty-third assignments of error, dealt with the matter of the deceased at the time of the injury being engaged in interstate commerce. There was ample evidence tending to show such to have been the case. If the facts in the case, whether pleaded or not, showed that the deceased was at the time of the injurey engaged in interstate commerce, then the Federal law regulating the plaintiff's rights was paramount, and excludes all conflicting State regulations. See Flanders v. Georgia Southern & F. R. Co., 68 Fla. 470, 67 South. Rep. 68; Seaboard Air Line Ry. v. Hess, 73 Fla. 494, 74 South. Rep. 500. The court erred in refusing the instructions requested. Counsel for defendant in error contend that whether the deceased was engaged in interstate commerce was a question of law, and that as the deceased was not working on a telephone line when the injury occurred, but was being carried to Boca Grande for the purpose of repairing telephones there, the court held that he was not engaged in interstate commerce and properly refused the instructions. Counsel contend that the Federal act applies only in cases where the injured person is at the moment of injury engaged in working upon some instrumentality of interstate commerce.

The plaintiff stated her case in the declaration upon the theory that the deceased at the time of the accident was on duty as a telephone lineman in the employment of the defendant and was being carried by defendant to Boca Grande where certain work was to have been performed by him. There was evidence tending to show that

the defendant was engaged in interstate commerce and used the telephone lines in connection with its business, both inter and intra state.    It was testified by one witness that the telephone lines were used in "dispatching trains and for the general conduct of the road in every way."  That the telephone was for the purpose of "dispatching trains and directing these trains in all respects in regard to handling shipments from the road to points outside the State."   Now was the work upon which the deceased was engaged when he was injured independent of the interstate commerce in which the defendant was engaged, or was it so closely connected as to be part of it. If it was, then the Federal act applies.   See Pederson v. Delaware, L. & W. R. Co., 229 U. S. 146, 33 Sup. Ct. Rep. 648.    While the  deceased was not actually repairing a telephone at the time of the injury, he was on duty as the declaration alleges, in the act of going to his work, and was therefore engaged in interstate commerce.  See Grand Trunk Ry. Co. of Canada v. Knapp, 233 Fed. Rep. 950; San Pedre, L. A. & S. L. R. Co. v. Davide, 210 Fed. Rep. 870.

Many cases which are deemed to be analogous may be cited, but it is unlikely that the most diligent investigation would reveal one exactly like the case at bar in all respects.  Many courts hold that the facts should be submitted to the jury under appropriate instructions.   See Atlantic Coast Line R. Co. v. Reaves, 208 Fed. Rep. 141.

The instructions should have been given as requested. The refusal to give them was error.

The judgment of the lower court is reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.