LOUISVILLE & NASHVILLE RAILROAD COMPANY, *Plaintiff in Error*, v. WALTER BROWN, *Defendant in Error*.

Opinion Filed January 22, 1919.

Petition for rehearing denied March 17, 1919.

1.  In saving the defense of assumption of risk in cases other than those where the carrier's violation of a Statute enacted for the safety of employees contributed to the injury or death, the Federal Employers' Liability Act places a co-employees' negligence, where it is the ground of the action, in the same relation as the employer's own negligence would stand to the question whteher a plaintiff is to be deemed to have assumed the risk.

2.  While an employee assumes the risks and dangers ordinarily incident to the employment in which he voluntarily engages, so far as those are not attributable to the negligence of the employer or of those for whose conduct the employer is responsible, the employee has a right to assume that the employer has exercised proper care with respect to providing a reasonably safe place of work (and this includes care in establishing a reasonably safe system or method of work) and is not to be treated as assuming a risk that is attributable to the employer's negligence until he becomes aware of it, or it is so plainly observable that he must be presumed to have known of it.

3.  Under the Federal Employers' Liability Act pleas averring
    that the defects and attendant risks not regulated by a Fed-
    eral Statute, but arising from stated simple facts, were
    perfectly obvious to the injured employee and that he was
    entirely familiar with them, are sufficient basis for evidence
    of assumed risk to bar recovery.

Writ of Error to Court of Record for Escambia Coun-
ty; C. M. Jones, Judge.

Judgment reversed.

*Blount* & *Blount* & *Carter,* for Plaintiff in Error;

*John P. Stokes* and *R. Pope Reese,* for Defendant in
Error.

PER CURIAM.—In an action brought by Brown against
the railroad company, the declaration in effect alleges
that on November 21st, 1916, the defendant was engaged
in interstate commerce; that on said day the "plaintiff
was employed by the defendant in the capacity of boiler-
maker's helper in defendant's railroad shops and round
house in the City of Pensacola, Florida, and while em-
ployed by defendant as such boilermaker's helper was
engaged in interstate commerce, in that he was employed
as such boilermaker's helper in the repairing of defend-
ant's locomotive engines, used by the defendant in haul-
ing its trains of cars upon defendant's said line of rail-
road running from Pensacola, Florida, to Flomaton,
Mobile, Selma and Montgomery, Alabama, and other
points in the State of Alabama and other States of the
United States aforesaid; that on the date aforesaid the
plaintiff was engaged and employed by defendant in as-
sisting and helping DeWitt Smallwood, another employee

5—Vol. 77.

of defendant, the Louisville & Nashville Railroad Company, in repairing the defendant's said locomotive engine so used by defendant, the Louisville & Nashville Railroad Company, as aforesaid, in its said round house in the City of Pensacola, and was engaged in putting into the said locomotive engine in the front end of the boiler below the smokestack of the said locomotive engine, a certain spark- arrester made of heavy wire netting, which said spark-arrester is in two sections, the edges of the said spark-arrester being raw ends of sharp wire, which wire was the wire forming the netting of spark-arrester, and each section of the spark-arrester was of considerable weight, weighing about thirty or forty pounds; that on the date aforesaid while plaintiff was so engaged in said work, and without the knowledge of plaintiff, the defendant through its servants and agents negligently and carelessly had caused to be strung a certain electric wire from the front end of the said engine and the boiler where plaintiff was so engaged in said work with the said DeWitt Smallwood, defendant herein, as aforesaid, in such a manner as that the said wire was immediately above the head of plaintiff where it would interfere with plaintiff in the prosecution of his work, and did interfere in this, that when plaintiff attempted to lift one-half of the section of the said wire spark-arrester and pass it up to the said DeWitt Smallwood, who was on the pilot or front end of the locomotive engine to receive the said section of spark-arrester, and fit it in place, and while in the act of lifting up the said section of the said spark-arrester to pass it to the said DeWitt Smallwood, defendant herein, as aforesaid, the said spark-arrester caught against and upon the said wire, so negligently and carelessly placed as aforesaid and was sprung or forced back and against the plaintiff with such force

that it fell upon plaintiff's foot and the raw edges of the
wire of the said spark-arrester were with great force and
violence forced through and into plaintiff's foot, thereby
giving to and inflicting upon plaintiff divers and sundry
wounds, bruises and other injuries from the effects of
which plaintiff suffered, continues to suffer and will here-
after suffer intense pain in body and in mind, and lost
much time from his vocation and the consequent loss of
earnings, and was compelled to lay out and expend much
money and to obligate himself for medical and doctor's
bills in and about the treatment of the injury received
by him, and the plaintiff is permanently disabled."

The defendant pleaded (1) not guilty, (2) that the
so-called electric wire mentioned in plaintiff's declara-
tion was an insulated portable electric cord about ——
feet long, and about one-quarter ($\frac{1}{4}$) of an inch in
diameter, that to one end of this cord was attached either
a socket or a plug, and to the other end a guarded elec-
tric lamp. That the said socket or plug end of said cord
was attached by the said socket or plug to a similar piece
of cord about the same length which led to a wall bracket
attached to the inside wall of the shops of the said de-
fendant railroad company, and the two pieces of cord
were easily separable, that the end of the cord to which
the light was attached was loose so that said light could
be carried about from place to place as needed. That
the said piece of cord was perfectly pliant and when it
became necessary to use it for working in the front end
of a locomotive in the manner described in the plain-
tiff's declaration, the employees so engaged in said work
passed a loop of the said cord over some projecting part
of the said locomotive and rested it thereon, and passed
the said lamp into the opening in the front of the said

locomotive so that they could see how to work on the interior thereof.

That the said electric cord was entirely under the control of the plaintiff, at the time of his alleged injury, and plaintiff prior to his said alleged injury could have adjusted it to suit his convenience.

That there was sufficient light so that said cord and its position with respect to plaintiff's said work was perfectly apparent, and if as in the said declaration alleged, the said cord interfered with the plaintiff in the prosecution of his work, the probability of such interference was perfectly obvious and the plaintiff assumed the risk of an injury resulting in the manner alleged in the said declaration, if, as a matter of fact, said injury was so received; (3) that it is untrue that the plaintiff was injured by the means and in the manner set forth in the declaration; (4) that the so-called wire described in the declaration was similar in construction and manner of use to many others in the shops of the defendant, the Louisville and Nashville Railroad Company, and the plaintiff had been employed by the said defendant for about two years prior to his alleged injury, and was frequently in the said shops, and almost daily during the period of his said employment saw the said wires in use in work similar to that in which the plaintiff alleges he was engaged at the time of his alleged injury, and plaintiff was entirely familiar with the manner in which the said wire was used at the time of his alleged injury and thereby assumed the risk.

A demurrer to the second and fourth pleas was sustained. Trial was had on the first and third pleas. To a judgment for the plaintiff writ of error was taken.

It was agreed that the plaintiff and defendant was engaged in interstate commerce at the time of the accident. Minneapolis & St. Louis Railroad Co. v. Winters, 242 U. S. 353,    Sup. Ct. Rep.    ; Osborne v. Gray, 241 U. S. 16, 36 Sup. Ct. Rep. 486; 1 Roberts Federal Liabilities of Carriers, Secs. 488, 492, 465; Law v. Illinois Cent. R. Co., 208 Fed. Rep. 869, 126 C. C. A. 27; Kuchenmeischer v. Los Angeles & S. L. R. Co.,    Utah   , 172 Pac. Rep. 725.

Special pleas two and four do not aver the assumption of risk as to the nature or affect of a peculiarly dangerous substance that may not be a matter of common knowledge as in Goulding Fertilizer Co. v. Watts, 63 Fla. 155, 58 South. Rep. 362. But the assumption of risk here averred has reference to the existence and location of portable electric cord about one-quarter of an inch in diameter, not charged with electricity, but so placed as likely to come in contact with the material being handled by the plaintiff in his work for the defendant. It was, therefore, in this case not necessary to specifically aver that the plaintiff appreciated the risks resulting from the facts averred in the stated pleas. Ordinarily a normal man may be regarded as appreciating the risks incident to the facts averred in the second and fourth pleas. The pleas are legally sufficient as bases for defensive evidence, and the order sustaining the demurrer to them is not clearly harmless, since assumption of risk in this class of cases when duly established is a bar to recovery, and it does not appear that the defendant adduced evidence as to all the material averments of the pleas, even though there was evidence that the position of the cord was obvious, which was affected by testi-

mony that plaintiff did not see the cord because of the presence of smoke, and did not know the cord was there.

Under the provision of the Federal Employers' Liability Act of Congress "that an employee shall not be held to have assumed the risk of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee," the doctrine of assumed risk is applicable and bars recovery when duly shown in cases of this class, except when the violation

of the Federal Statutes enacted for the safety of employes contributed to the injury. Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 34 Sup. Ct. Rep. 635; Erie Railroad Co. v. Purucker, 244 U. S. 320,    Sup. Ct. Rep.    ; Boldt v. Pennsylvania R. Co., 245 U. S. 441,    Sup. Ct. Rep.    ; 1 Roberts Federal Liabilities of Carriers, Sec. 558, page 990. The pleas held insufficient do not involve safety appliance statutes. Kuchenmeiscer v. Los Angeles & S. L. R. Co., *supra.*

The Federal Employers' Liability Act abrogated the common-law fellow servant rule by placing negligence of a co-employee upon the same basis as negligence of the employer.

In saving the defense of assumption of risk in cases other than those where the carrier's violation of a statute enacted for the safety of employees contributed to the injury or death, the Federal Employers' Liability Act places a co-employee's negligence, where it is the ground of the action, in the same relation as the employer's own negligence would stand to the question whether a plaintiff is to be deemed to have assumed the

risk. Chesapeake & O. R. Co. v. De Atley, 241 U. S. 310, 36 Sup. Ct. Rep. 564.

"Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. These distinctions have been recognized and applied in numerous decisions of this court. Choctaw, Oklahoma & Gulf R. Co. v. McDade, 191 U. S. 64, 68; Schlemmer v. Buffalo, Rochester & Pittsburgh Ry. Co., 220 U. S. 590, 596; Tex. & Pac. Ry. Co. v. Harvey, 228 U.S. 319, 321; Gila Valley Ry. Co. v. Hall,232 U. S. 94, 102, and cases cited." Seaboard Air Line Ry. v. Horton, 233 U. S. 492, text 504, 34 Sup. Ct. Rep. 635.

"While an employee assumes the risks and dangers ordinarily incident to the employment in which he voluntarily engages, so far as these are not attributable to the negligence of the employer or of those for whose conduct the employer is responsible, the employee has a right to assume that the employer has exercised proper care with respect to providing a reasonably safe place of

work (and this includes care in establishing a reasonably safe system or method of work) and is not to be treated as assuming a risk that is attributable to the employer's negligence until he becomes aware of it, or it is so plainly observable that he must be presumed to have known of it. The employee is not obliged to exercise care to discover dangers not ordinarily incident to the employment, but which result from the employer's negligence. Tex. & Pac. Ry. v. Archibald, 170 U. S. 665, 671, 672; Choctaw, Oklahoma, etc., R. R. v. McDade, 191 U. S. 64, 68; Tex. & Pac. Ry. v. Harvey, 228 U. S. 319, 321;

Gila Valley Ry. v. Hall, 232 U. S. 94, 101; Seaboard Air Line v. Horton, 233 U. S. 492, 504.''. Chesapeake & O. R. Co. v. Proffitt, 241 U. S. 462, text 468, 36 Sup. Ct. Rep. 620.

The evidence in this case is not so conclusive in support of the verdict rendered as to clearly show harmless error in sustaining the demurrer to the pleas setting up the defense of assumed risk, and the demands of justice under the law require a reversal of the judgment for a new trial.

Judgment reversed.

All concur.