IDA J. TATOM, AS ADMINISTRATRIX OF THE ESTATE OF J. M. TATOM, DECEASED, *Plaintiff in Error,* v. SEABOARD AIR LINE RAILROAD COMPANY, A CORPORATION, *Defendant in Error.*

Division A.

Opinion Filed May 16, 1927.

1. The plea of assumption of risk in an action against a railroad company by a person's legal representative for death by wrongful act in admissible in this State.

2. In an action against a railroad engaged in interstate commerce for damages for death by wrongful act the plea of assumption of risk is not allowable where the declaration states a case under the Federal Employers' Liability Act in connection with a violation by the defendant of some provision of the Federal Safety Appliance Act.

3. When an action is brought for damages for death by wrongful act against a railroad corporation engaged in interstate commerce the pleas of contributory negligence and assumption of risk are allowable where it does not appear from the allegations of the declaration that the alleged defects in the machinery, cars, engines, and appliances bore a proximate casual relation to the injury sustained and when it appears form the declaration upon the contrary that the thing causing the injury was not within the purview of the Federal Safety Appliance Act.

4. The failure of a carrier engaged in interstate commerce to comply with any requirements of the Federal Safety Appliance Act is wrongful, but such wrong must appear to have been the proximate cause of the injury to give to the injured party a cause of action under the Act.

5. Proximate cause is that which naturally leads to or produces a given result such a result as might be expected directly and naturally to flow from such cause; such a result as

naturally suggests itself to the mind of any reasonable and prudent man as likely to flow out of the performance or non-performance of any act.

6. Not every case involving the question of proximate cause of an injury presents such a doubtful state of facts as to require the interpretation of them by the opinion of a jury as to their logical sequence.

A Writ of Error to the Circuit Court for Duval County; George Cooper Gibbs, Judge.

Judgment affirmed.

*A. H. King, Roswell King* and *George C. Bedell,* for Plaintiff in Error.

*Fleming & Fleming,* for Defendant in Error.

ELLIS, C. J.—The plaintiff in error brought an action against the Railroad Company for damages for the wrongful death of her husband. Upon the conclusion of the testimony the court instructed a verdict for the defendant which was rendered and judgment was entered for the defendant.

The plaintiff moved for a new trial and in arrest of judgment both of which motions were denied and she thereupon took a writ of error.

The plaintiff's husband was a locomotive engineer in the employment of the Railroad Company. In October, 1920, while the locomotive which he was driving passed along the tracks between the towns of Neals and Willeford in Alachua County he was killed by striking his head against a piece of timber forming part of a structure called a wood rack near the railroad track.

Not long ago, in some parts of the State, wood was used in railroad engines as fuel. It was hauled by the persons supplying it for the Railroad Company to points along the

track and stacked on "wood racks" which were erected close to the track for the convenience of the train crew who, as the necessities required, loaded the engine's tender with wood from the racks.

On this particular road, between the points stated, the engine in use on the day of the accident and which was being driven by Mr. Tatom was not a "wood burner," as engines of a certain type were called. In fact, the rack had not been used for more than a year. Mr. Tatom knew of its existence and of its nearness to the track. On the day of the accident the engineer was leaning out of his cab, or standing on the step, or out on the running board, as the engine passed the wood rack examining a certain piece of machinery of the engine which was temporarily out of repair and for which some small piece of metal had been substituted. Mr. Tatom's head was struck by a piece of timber composing part of the structure of the wood rack. The impact killed him and he fell to the ground. A short while afterwards his absance from the engine was discovered by the fireman who stopped the train and upon orders from the conductor it "backed" down the track to the wood rack where the body of the engineer was found.

The declaration filed on March 6, 1922, by Mrs. Ida J. Tatom as administratrix of the estate of her husband contains three counts. The first charges the negligence of the defendant to have consisted in running the train too close to the "obstruction near said track" to leave a safe distance between the locomotive and the obstruction for the "safe passage of the deceased in the performance of his duties in his said employment to defendant". The second count describes the obstruction as a "wood rack", which was permitted to remain so close to the tracks as not to leave a safe distance between the locomotive and the engine on which deceased was riding for his safe passage in the performance of his duties. The third count charges the negli-

gence to have consisted in the rotten and unfit condition of the wood rack resulting in the protrusion of a piece of timber therefrom which had become unfastened so close to the track as to be unsafe for the "passage of the deceased in the performance of his duties".

Several months after the filing of the declaration the defendant pleaded not guilty and many other pleas. Several of them were equivalent to the general issue. The seventh averred that Tatom, the deceased, without regard for his own safety placed himself in a position to be struck by the wood rack by leaning out of the cab of the locomotive. The ninth and tenth pleas set up the defense of assumption of risk. So did the eleventh, twelfth and thirteenth pleas.

The plaintiff demurred to all the pleas except the first, and also moved to strike them. The demurrer was overruled as to all of the pleas except the eighth and sustained as to that plea, which was fully covered by the general issues as it merely denied that the wood rack was too close to the track for safety. The motion to strike was granted as to the fourth, seventh, eleventh, twelfth and thirteenth pleas. This left the second, third, fifth, sixth, ninth and tenth pleas standing to the declaration. The second, third and fifth pleas were fully covered by the general issue as they merely denied the wrong which was alleged to have consisted in erecting and maintaining the wood rack too near to the track for safety. The sixth plea denied the allegations of the third count of the declaration that Tatom was struck by a pole or piece of timber that had been allowed to become unfastened from the rack and extend too close to the track.

The plaintiff then filed a "Third Amended Fifth Count" to the declaration in which it was alleged in substance that the defendant was negligent in not equipping and maintaining a proper "driving box or driving box wedge appur-

tenant to one of the wheels of the locomotive''; that the wedge with which it was equipped did not freely and properly operate and the deceased was ''required in the performance of his duty to lean out of the cab of said locomotive to observe the said ''wedge'' and while doing so he was struck by the wood rack. A motion to strike the material parts of the declaration as to the allegation of negligence was overruled but certain words affecting only the measure of damages were stricken.

Twenty pleas were then interposed by the defendant to this count. The first was the plea of not guilty. Sixteen of the remaining were covered by the first plea. They merely denied the negligence; the necessity for and the fact of Tatom's leaning out of the cab to observe the ''wedge''; that the defective wedge was the proximate cause of the injury and the averment that he failed to exercise due care. The remaining three pleas, the eighteenth, nineteenth and twentieth, set up as a defense the assumption of risk.

The plaintiff joined issue upon all the pleas which were left standing to the first, second and third counts and to all the pleas interposed to the third amended fifth count.

The defenses interposed to the case made by the declaration therefore were only two, viz: not guilty and assumption of risk.

If the pleas of assumption of risk as to the last count were inadmissible it must be because the declaration states a case under the Federal Employers' Liability Act in connection with an alleged violation by the defendant of some provision of the Federal Safety Appliance Acts. Such a case excludes all defenses of contributory negligence and assumption of risk. In such case the Federal law regulating the plaintiff's right to recover is paramount and excludes all conflicting State regulation. See Charlotte H. & N. R. Co. v. Truette, 81 Fla. 152, 87 South. Rep. 427.

The pleas of assumption of risk as to the first, second and third counts were admissible. See Cooney-Eckstein Co. v. King, 69 Fla. 246, 67 South. Rep. 918; Seaboard Air Line Railway v. Horton, 233 U. S. 492, 58 L. Ed. 1082.

The plaintiff did not demur to the eighteenth, nineteenth and twentieth pleas to the "Third Amended Fifth Count" nor did her counsel move to strike them. She joined issue upon those pleas and the parties went to trial.

Upon the conclusion of the testimony for the plaintiff the defendant moved the court for an instructed verdict for the defendant, which was granted and the jury returned a verdict of not guilty upon which judgment was entered for the defendant.

There was a motion in arrest of judgment upon the ground that the pleas numbered seventeen, eighteen, nineteen and twenty to the third amended fifth count presented an immaterial issue because such pleas constitute no defense under the "Safety Appliance Law" or under the "Hazardous Employment Act of the State of Florida."

That motion was denied.

There was also a motion for a repleader upon the same grounds, which was denied.

The plaintiff took a writ of error and assigned nine errors.

The ninth plea to the first, second and third counts—the overruling of a demurrer to which is the basis of the first assignment of error—presented the defense of assumption of risk. The three first counts of the declaration made no case of a violation by the defendant of the Federal Safety Appliance Act although by those counts the plaintiff sought to present a case under the Federal Employers' Liability Act. From the statement of the plaintiff's case as contained in those counts it does not appear that the injury resulted

from the negligence of the defendant in violating any statute enacted for the safety of employees.

Neither the declaration in the first three counts nor the ninth plea which was held to be a valid defense involved any safety appliance statute. The case presented was that of an alleged danger to an engineer operating one of the defendant's locomotives, which was produced by the nearness to the railroad track of "a wood rack." The plea averred that the deceased knew of the existence of the wood rack; that it had been there for a long time previous to the accident and that it was in the condition and situation alleged, and that he knew the risk arising from it. The plea was a valid defense. See Louisville & N. R. Co. v. Brown, 77 Fla. 64, 81 South. Rep. 156.

There was no relation between the alleged defective "wedge or driving box" and the injury which befell the deceased. The thing that caused the injury was a structure called a wood rack located near the track of the defendant company. It was a visible object known to the deceased, could have been seen by him from his place in the engine's cab, and he was capable of judging its distance from the track and consequent degree of danger to himself wherever he might be on the engine, whether in the cab or on the outside watching the working of the "wedge." With this knowledge of the potential danger in no wise related to the defective engine, he obviously under the averments of the plea took the chances of doing what he did when he struck the timber on the rack. See Southern Pac. Co. v. Berkshire, 254 U. S. 415, 65 L. Ed. 335, 41 Sup. Ct. Rep. 162.

The first and second assignments of error, the last based upon the order of the court overruling the demurrer to the tenth plea setting up the defense of assumption of risk, are not sustained.

The third assignment of error attacks the court's affirm-

ative instruction to the jury to find for the defendant. The plaintiff in error says the instruction failed to give effect to the several Acts of Congress for the protection of employees of railroads engaged in interstate commerce.

The count which sought to present a case of injury resulting from the violation by the defendant of the Federal Safety Appliance Acts is the third amended fifth count. It is alleged that the defendant was engaged in interstate commerce and that ''it failed to equip and maintain the locomotive on which the said Junius M. Tatom, deceased, was engaged in the performance of his duty as aforesaid with a proper driving box or driving box wedge appurtenant to one of the wheels of said locomotive.'' ''That the wedge failed to freely and properly operate.'' That Tatom ''by reason of the negligence aforesaid of the defendant was required in the performance of his duties aforesaid to lean out of the cab of said locomotive to observe the said wedge, and while so leaning out of the cab of said locomotive to observe the said ''wedge'' he was struck by ''a certain wood rack or part thereof situated in close proximity to the rails of the defendant's railroad upon which the locomotive was then and there moving'' and was killed.

The Act of April 22, 1908, 35 Stats. at Large 65, Chap. 149, provides that every common carrier while engaging in interstate commerce shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of death of such employee, to his personal representative for such injury or death ''resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery,'' etc.

To sustain a case for damages for personal injuries under the act against a railroad company engaged in interstate

commerce it should appear that the defect complained of bore a proximate causal relation to the injury sustained; otherwise the question of contributory negligence or assumption of risk may arise as a defense if there is an allegation that the defendant was negligent in causing or maintaining or permitting to exist the thing not within the purview of the Federal Act which constituted the proximate cause of the injury. See Philadelphia & R. Ry. Co. v. Auchenbach, 16 Fed. Rep. (2nd Series) 550; Louisville & N. R. Co. v. Layton, 243 U. S. 617, 61 L. Ed. 931, 37 Sup. Ct. Rep. 456; Davis v. Wolfe, 263 U. S. 239, 68 L. Ed. 284, 44 Sup. Ct. Rep. 64; St. Louis & S. F. R. Co. v. Conarty, 238 U. S. 243, 59 L. Ed. 1290, 35 Sup. Ct. Rep. 785.

It is true that failure of a carrier engaged in interstate commerce to comply with any requirement of the Federal Safety Appliance Acts is wrongful, but every wrong does not result in injury; therefore the wrong must be the proximate cause of injury to give to the injured party a cause of action.

Proximate cause has been fully defined by this Court. It "is that which naturally leads to or produces a given result; such a result as might be expected directly and naturally to flow from such cause; such a result as naturally suggests itself to the mind of any reasonable and prudent man as likely to flow out of the performance or non-performance of any act." See Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Manuf'g Co., 27 Fla. 1, 9 South. Rep. 661, 17 L. R. A. 33; Moore v. Lanier, 52 Fla. 353, 42 South. Rep. 462; Florida East Coast R. Co. v. Wade, 53 Fla. 620, 43 South. Rep. 775.

Every case involving the question of proximate cause of the injury does not present such a doubtful state of facts as to require the interpretation of them by the opinion of a jury as to their logical sequence. If, as an example, it had

been alleged in the declaration that there was a defective coupler on the rear end of the last car attached to the train and the deceased ''by reason thereof'' was killed by the impact of his head on the wood rack, as alleged, it could not reasonably be contended that the jury by its opinion could establish the causal proximate relation between the wrong and the injury.

It is not apparent that if the wood rack had not been where it was alleged to be that the alleged defective wedge would have produced the injury, nor that it could have started the flow of a series of facts which would have led to the injury. It is apparent, then, that the wood rack at the particular place was thus the separate, independent intervening cause of the impact upon it of the body or head of the deceased, but it is not alleged that the erection or maintenance of the wood rack at that place was a negligent act of the defendant. It follows therefore from the language of the count that the injury resulted from the impact of the body of the deceased upon a wood rack which was where the defendant had a right to place and maintain it and in which it was not negligent in so doing.

The pleas of assumption of risk were, therefore, proper.

Upon that issue the parties went to trial. The evidence fully sustained them. There was no fact about which there could be a reasonable difference of opinion either as to its existence or significance.

The ''driving box wedge'' had been out of place or defective or had not been operating perfectly. It had been repaired during the run and was operating well enough not to cause any apprehension of danger if any could flow from it. The engineer had passed the wood rack many times, knew of its existence and that the engine could pass it without being struck by it. He leaned out of the cab to ''observe'' the ''wedge,'' or stepped out of the cab either on

the step which led to it or went on the running board outside the engine and leaned out sufficiently far as to bring his head in line with one end—that nearest the track of the defendant—of the wood rack.

What could be accomplished by "observing" the "wedge" at that time is not shown; nor is it shown that the wedge at the time of being observed by the deceased was defectively operating; nor what damage could flow from such defect. The necessity for observing the wedge at the time was not shown nor what could have been done if it had been operating defectively. The deceased's leaning out of the cab or going out upon the engine to "observe" the wedge appears to have been a voluntary act impelled by curiosity or interest in his engine by which act he placed himself in the way of danger which he knew existed, and which did not exist by reason of the defective wedge, and was killed. In this state of the case a verdict for the plaintiff would not have been justified so the affirmative charge was not error.

There was no evidence to sustain the allegations of the first or second counts because there was nothing to show that the wood rack was so located as to be in anywise dangerous to the engineer while at his place in the cab of the locomotive.

Under these counts if the engineer was struck by the wood rack while he was not in the cab but on the outside of it leaning out toward the rack then there was a variance between the allegation and the proof; so there could have been no recovery on those counts.

The judgment of the Circuit Court is affirmed.

STRUM AND BROWN, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.